[No. 11815.   In Bank. — June 10, 1890.]

VOLINA E. HARRIGAN, RESPONDENT, *v.* LAURA A. MOWRY, APPELLANT.

QUIETING TITLE — LEGAL TITLE HELD BY DEFENDANT AS TRUSTEE OF PLAIN-
    TIFF — ENFORCEMENT OF TRUST. — An action to quiet title will not lie
    in favor of the owner of an equitable title, for whom the defendant holds
    the legal title in trust, the only proper remedy for such plaintiff being an
    action to enforce the trust, and to compel a conveyance of the legal title.
ID. — REASON FOR WITHHOLDING CONVEYANCE. — The fact that the reasons
    of the defendant for withholding a conveyance from the plaintiff are in-
    sufficient, unreasonable, or unjust will not warrant the court in declar-
    ing that the defendant has no title.

ID. — EXPRESS TRUST — EXPIRATION OF TERM — POSSESSION BY BENEFI-
CIARY. — When an express trust has been created by a conveyance of
land to the defendant to be held in trust for the plaintiff for five years,
and to be reconveyed to the plaintiff at the end of said term, the mere pos-
session of the plaintiff at the expiration of the five years, without a recon-
veyance, will not justify a finding that the legal title is in her.

ID. — ADVERSE CLAIM. — The claim of defendants to hold the legal title as
trustees of an express trust in favor of the plaintiff as sole beneficiary is
not adverse to the title of plaintiff as such beneficiary.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of Commissioner
Vanclief.

*R. Percy Wright,* for Appellant.

The action to quiet title will not lie where the plaintiff
has not the legal title. (*City and County of San Fran-
cisco* v. *Ellis,* 54 Cal. 72; *Learned* v. *Welton,* 40 Cal. 349;
*Von Drachenfels* v. *Doolittle,* 77 Cal. 295; *Frost* v. *Spitley,*
121 U. S. 552; *Northrop* v. *Andrews,* 39 Kan. 571; *Burton*
v. *Le Roy,* 5 Saw. 510.) The trust of defendant must be
enforced by a different action, upon principles of equity
after a proper accounting, and compensation to the trus-
tee. (Pomeroy's Eq. Jur., secs. 385, 392, 1084, 1085; *Pujol*
v. *McKinlay,* 42 Cal. 559.) The plaintiff cannot recover in
possession, when the adverse party shows title. (*Sepul-
veda* v. *Sepulveda,* 39 Cal. 13; *Shiels* v. *Haley,* 61 Cal.
157; *Northrop* v. *Andrews,* 39 Kan. 571; *Burton* v. *Le Roy,*
5 Saw. 510.) The possession of a beneficiary is not ad-
verse to the title of the trustee. (*Taylor* v. *Gooch,* 4 Jones
Eq. 150; 3 Washburn on Real Property, 162, 163.) The
purpose of an express trust is not fulfilled, within the
meaning of the code, while anything remains to be done
according to its terms. Here the whole estate vested in
the trustees (Civ. Code, sec. 863), and a reconveyance is
necessary to revest the title. (2 Pomeroy's Eq. Jur., sec.

1065; Civ. Code, sec. 1091.)    A suit to determine an adverse claim must be distinguished from a suit to remove a cloud upon title, as respects equitable title in the plaintiff.

*C. H. Parker*, and *Page & Eells*, for Respondent.

The purpose of the trust having ceased, the trust ceased.    (Civ. Code, secs. 871, 2279, 2282; *Weisenberg* v. *Truman*, 58 Cal. 72.)    Equitable rights of the parties may be determined where there is an adverse claim. (*Head* v. *Fordyce*, 17 Cal. 149; *Castro* v. *Barry*, 79 Cal. 446, 447; *People* v. *Center*, 66 Cal. 555, 556, 562; *Joyce* v. *McAvoy*, 31 Cal. 287, 288; 89 Am. Dec. 172; *Hyde* v. *Redding*, 74 Cal. 497; *Withers* v. *Jacks*, 79 Cal. 297; *Smith* v. *Brannan*, 13 Cal. 107; *Burt* v. *Bowles*, 69 Ind. 10; *Murphy* v. *Sears*, 11 Or. 127.)

WORKS, J.— The judgment in this case was reversed by Department One, the opinion having been written by Commissioner Vanclief.    A rehearing was granted. The second argument and further consideration of the case has convinced us that the decision of the department was right, for the reasons stated in the opinion of the learned commissioner.    In addition to what is said in the former opinion, it may be remarked that the evidence clearly proved that the plaintiff was the owner of the equitable title to the property in litigation, and that the defendant was the owner of the legal title thereto as her trustee.    Therefore, conceding that an action to quiet title was the proper remedy, the court, under the evidence, should have rendered judgment accordingly.    Such a judgment would have availed the plaintiff nothing.    It would have left her just as she was in the beginning.    Her object was not to declare the title as it really was, which is the effect of a successful action to quiet title.    Her purpose was to change the title and vest in herself the legal title that was outstanding in her

trustee. This could not be done by an action to quiet title. The proper action would have been one to close up the trust, or to show that it had been closed, and to compel a conveyance of the legal title. It can make no difference that the reasons of the defendant for withholding a conveyance were insufficient, or even unreasonable, as claimed. The court below could not, nor can we, declare that she has no title, because she should in justice have conveyed it to the plaintiff.

Judgment reversed, and cause remanded for further proceedings.

PATERSON, J., McFARLAND, J., FOX, J., and SHARP-STEIN, J., concurred.

The following is the opinion, above referred to, rendered on the 22d of November, 1889:—

VANCLIEF, C.—Action to quiet title. The amended complaint, in two counts, and in the most general form (filed July 28, 1885), alleges "that the plaintiff above named is now, and has been for a long time past, the owner of and in the possession of that certain piece or parcel of land situate, lying, and being in said city and county of San Francisco [describing the lot]. And the plaintiff further avers that the said defendant claims an interest therein adverse to the plaintiff, and that the claim of said defendant is without any right whatever, and that the said defendant has not any estate, right, title, or interest whatever in said land or premises, or any part thereof." The second count, for another lot in the city of San Francisco, is in the same form. The prayer, in substance, is, that defendant be required to set forth the nature of her several claims; that all her adverse claims be determined; that it be adjudged that plaintiff is the owner of the lots, and that the defendant has no estate or interest therein; and that defendant be enjoined from asserting any claim thereto adverse to the

plaintiff. This complaint, not being verified, was answered,—1. By a denial of each and every allegation of both counts; and 2. By the affirmative allegations "that the defendant is the owner in fee of the real property described, as trustee of an express trust respecting the same, and that the plaintiff herein is the beneficiary of said trust." The court found, generally, that all the allegations in plaintiff's complaint are true, and that all the allegations in the defendant's answer are untrue; and specially found that the defendant was not, at the commencement of the action, the owner in fee of the lots, or any part thereof, as trustee of an express trust, or otherwise; and that the plaintiff is not, and has not been since the thirteenth day of January, 1884, the beneficiary of any trust concerning or relating to said property, or of any part thereof. As a conclusion of law, the court found that the plaintiff was entitled to judgment as prayed for in the complaint, and judgment was so rendered. Defendant appeals from the judgment, and from an order denying her motion for new trial, and relies wholly upon the point that the findings of fact are not justified by the evidence.

There was no substantial conflict in the evidence. It was proved by the plaintiff that on the thirteenth day of January, 1879, the estate of Eliza Haskell, deceased, was in process of administration in the probate court of the city and county of San Francisco, and consisted of real and personal property; that John L. Haskell, the step-father of the plaintiff, was administrator of the estate; and that plaintiff, as the daughter and heir of the deceased, was entitled to an undivided one-third part of the estate. Under these circumstances, and on that day (January 13, 1879), the plaintiff executed a deed to John L. Haskell and the defendant, by which she granted and conveyed to them, for the consideration of one dollar, all her interest, it being an undivided one-third part, "of all the property, real, personal, and

mixed, belonging to the estate of Eliza Haskell, deceased, and situated in said city and county" (and for a more particular description referring to county records, and to the papers on file in the probate court), with all appurtenances, "together with all her claims, demands, and interest in and to the estate of Eliza Haskell, deceased"; "to have and to hold all and singular the said hereinbefore described premises and property and estate, . . . . for the uses and purposes hereinafter mentioned, for the benefit of the party of the first part, . . . . namely, to take charge of, manage, lease, and preserve, and to take and receive the rents, issues, profits, increase, and income of said estate, property, and premises, and out of the same to keep and preserve said property, premises, and estate in good order and repair, properly insured and preserved, and to pay all taxes, assessments, and liens imposed thereon, and to pay the residue of such rents, profits, increase, and revenue, as and for her separate estate, to the said party of the first part, . . . . for and during the term of five years, and at the end of said term to reconvey to said party of the first part . . . . the property, premises, and estate herein granted. . . . . The parties of the second part shall have no right to execute any conveyance or deed of or to create any lien upon the estate and interest of the said party of the first part without her written consent. . . . . And it is further understood and agreed that said parties of the second part will pay over to the party of the first part the rents, issues, and profits due her monthly, so far as the same may be practicable; . . . . that from time to time, and not less than once at the expiration of each and every term of three months from and after the acknowledgment of this agreement, a report in writing shall be made, by said trustees, to said party of the first part, of the receipts, disbursements, and condition of said estate and interest, if demanded by the party of the first part. And said Volina E. Harrigan waives and re-

leases all right or power to sell or dispose of or encumber the said property for and during said term of five years.

[Usual *testatum* clause.]

[Signed]                "VOLINA E. HARRIGAN.

"We, the undersigned, do hereby accept the above conveyance, upon the terms and conditions as above set forth.                "JOHN L. HASKELL.

"LAURA A. MOWRY."

The plaintiff further proved that on the fourteenth day of February, 1879, a decree of distribution was entered by the probate court giving to John L. Haskell and the defendant, as trustees of plaintiff under said deed, an undivided one-third part of the property of the estate of Eliza Haskell, deceased, consisting of both real and personal property, and including the two lots described in plaintiff's complaint. On May 13, 1880, by decree of the superior court, certain real property derived from said estate was partitioned. By this decree the two lots in question were set off to John L. Haskell and the defendant, as trustees of plaintiff under said deed of trust. The following testimony was given on behalf of the plaintiff, but no evidence was introduced by the defendant:—

Volina E. Harrigan, the plaintiff, on her behalf, said: "I am the plaintiff in this action, and am, and have been since the 13th of January, 1884, in the possession of the two pieces of real property described in the amended complaint in this action, and have been receiving the rents and profits thereof. Mr. Haskell and Mrs. Mowry were in possession of that property before that time.

"Q. What have you done in the way of exercising control over this property since the 13th of January, 1884? A. Oh, I have been in to see that the place was rented, and to see that repairs were made. My father would tell me that such and such repairs were to be made, and I would go and see if the work was really wanted."

### CROSS-EXAMINED.

" Q. What change was made on the 13th of January, 1884? Did you not receive the rents and profits before that? A. Well, I used to receive about so much a month before that time.

" Q. Who received the rents before the 13th of January, 1884? A. My father; that is, my step-father, J. L. Haskell.

" Q. Did he receive the rents of the property after that time, and pay them over to you? A. He did, for a while,—two or three months, or so.

" Q. Now, who actually collects the rents? A. Madison & Burke.

" Q. Didn't Madison & Burke always collect the rents before the 13th of January, 1884? A. Yes, sir.

" Q. Then no change was made on the 13th of January, 1884, except that you received the whole of the rents and profits? A. Yes, sir.

" Q. (By the court.) Have you made a demand on Mrs. Mowry for a deed? A. Yes, sir; I have."

### CROSS-EXAMINATION RESUMED.

" Q. Did you ever make any demand on Mrs. Mowry personally? A. No, sir; not personally.

" Q. At the 13th of January, 1884, did you receive any accumulated rents, or have any settlement of the account of rents? A. No, sir."

### RE-EXAMINED.

" Q. In what capacity did your father act when he collected the rents since the 13th of January, 1884? A. He was my agent.

" Q. Has he rendered you monthly statements since the 13th of January, 1884? A. He gave me one accounting for the full year last January.

" Q. How did he make out his accounts? A. To me.

" Q. As your agent? A. Yes, sir; as my agent."

Laura A. Mowry, called for plaintiff, said: —

" Q. What claim do you make to this property? What reason have you for not executing a quitclaim deed to it? A. I have not made any claim, except to have an accounting and settlement.

" Q. (By the court.) I understand you to say you make no claim and assert no right to the property; that the only question with you is the matter of the accounting and trust. A. For Mr. Haskell and myself to have an accounting with Mrs. Harrigan."

### DIRECT EXAMINATION RESUMED.

" Q. Do you claim to hold any title to this property as a trustee? A. Only until there is an accounting. That is just what Mrs. Harrigan wished me to do.

" Q. You decline to make any conveyance until there is an accounting? A. And I am settled with.

" Q. Well, you claim that you have a right to hold this property until you are settled with? A. Yes, sir.

" Q. That is your claim? A. Yes, sir.

" Q. Do you consider that you have a lien upon that real estate until you are settled with for any claim which you may have? A. Well, I will tell you what I understand. I understand that I was put in there as a trustee.

" Q. You make no other claim than that you have stated. A. The only claim that I make is for Mr. Haskell and myself to make an accounting to our ward for exactly what we have received, and what we have paid out, and what there is on hand, and how we have delivered the profit to our ward. I do not wish to have it said afterwards that Mrs. Mowry had wronged her ward. I want an accounting.

" Q. Now, you have no claim except what grows out of this trusteeship? A. No, sir.

" Q. Was there a deed presented to you for signature? A. Yes, sir.

" Q. And you declined to execute it? A. No, sir.

" Q. You have never executed it? A. No, sir; but I did not decline. I told Mr. Haskell that we should get together, and see exactly how we stood, and return to our ward exactly what was proper, and then I was ready and willing to sign.

" Q. Why did you insist on having an accounting before you executed the deed? A. Because I thought it was right, and I considered it my duty."

### CROSS-EXAMINED.

" Q. For whose benefit was the accounting you have sought? A. Mrs. Harrigan's, my ward; it was for her benefit.

" Q. Have you ever claimed, at any time, any interest adverse to her? A. No, sir; I have not; on the contrary, it is to assist and benefit her.

" Q. Have you not at all times been willing to do anything that would benefit her? A. Yes, sir; and have repeatedly asked Mr. Haskell to make an accounting.

" Q. Did you not demand it? A. I demanded it in writing of Mr. Haskell.

" Q. Will you state to the court if it is possible for you to prepare an account? A. It is an utter impossibility, because he refused me the books. I have no possible way of getting at it.

" Q. Who was the administrator of the estate of Eliza Haskell, deceased? A. J. L. Haskell.

" Q. Then your co-trustee was the person from whom you and he, as trustees, had to receive all the share of the personal property? A. Yes, sir.

" Q. Did you ever know positively that all or any considerable part of the personal property had been turned over by the administrator to the trustees? A. No; there is only five thousand dollars that I have any knowledge of. That was received by John L. Haskell and Laura A. Mowry, trustees, from John L. Haskell, administrator.

It was turned over at once, when there was a partial distribution.

"Q. During all the period of five years, did you act in the matter ? A. Always.

"Q. Some mention was made of Messrs. Sharp & McCeney having some claim against the trust estate. A. Yes, sir.

"Q. Did you, or did you not, spend a large amount of time on behalf of Mrs. Harrigan in that matter ? A. I did.

"Q. State about what you did as trustee. A. Sharp & McCeney were to get one third of what they recovered for Mrs. Harrigan from Mrs. Haskell's estate as their fee. They claimed twenty-five thousand dollars originally as due to them. By reason of my exertions as trustee, that was reduced to fourteen thousand four hundred dollars, which they agreed to take, and relinquish all their interest in the estate.

"Q. Have you ever received any compensation for your services as trustee? A. I have not; nothing at all."

### REDIRECT EXAMINATION.

"Q. Now, as a matter of fact, Mrs. Mowry, you have not received any rents, issues, or profits of the estate of your ward, have you? A. Not directly

"Q. Mr. Haskell did all the business, did he not? A. Yes, sir.

"Q. As between you and him? A. Yes, sir."

Charles G. Nagle, on behalf of plaintiff, said:—

"Q. Did you ever present Mrs. Mowry with a deed, and ask her to transfer this property? A. I did.

"Q. Was it accompanied by any release of claims or demands on the part of Mrs. Harrigan? A. I don't think it was, at the particular time of the presentation; but afterwards, at the time of presenting the deed to Mrs. Mowry, she said she would take the deed, and go to her attorney with it, and would return the deed to me,

and let me know whether she would execute it or not; and I asked her who her attorney was, and she would not inform me at the time, but afterwards she told me it was Mr. Mhoon, of Flournoy & Mhoon. I afterwards called upon her about the deed, and asked her several times, but got no definite answer. Afterwards it came about that I was to bring a release to Mrs. Mowry. The release was drawn up by you, and I copied it, and presented Mrs. Mowry with a copy of the release. She said that she believed that it was full enough. I believe I have a memorandum of it in my book."

Here the plaintiff rested, and no further evidence was offered on the part of the defendant.

1. The finding that the plaintiff was owner of the lots is not justified by the evidence. Conceding that plaintiff was in possession, and that possession is *prima facie* evidence of ownership, yet such *prima facie* evidence was rebutted and entirely overcome by the trust deed, and other evidence introduced by the plaintiff, showing that defendant and Haskell held the legal title. (*Sepulveda* v. *Sepulveda,* 39 Cal. 17.)

2. For the same reasons, the finding that the "defendant has not any estate, right, title, or interest whatever in said land or premises, or any part thereof," is unsupported by the evidence. Nor is there any evidence that the defendant claimed any interest in the land adverse to the title of plaintiff. It appears that the defendant rightfully claimed that she and Haskell held the legal title as trustees for the plaintiff; but their legal title, as such trustees, was not adverse to the title of the plaintiff as sole beneficiary, — the only title proved in her.

3. But conceding, without deciding, that the plaintiff was entitled to a conveyance of the legal title, and that defendant wrongfully refused to convey it, an action to quiet title under section 738 of the Code of Civil Procedure was not appropriate, nor even permissible. (*Von Drachenfels* v. *Doolittle,* 77 Cal. 295; *Brewer* v. *Houston,*

58 Cal. 345; *Learned* v. *Welton*, 40 Cal. 349; *Frost* v. *Spitley*, 121 U. S. 552; 7 Sup. Ct. Rep. 1129.)   I think the judgment and order should be reversed, and the cause remanded.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded.