[Civ. No. 3955. Second Appellate District, Division Two.—September 15, 1924.]

## CHARLES H. POWELL et al., Respondents, v. ANNETTE MOHR, Appellant.

[1] FRAUD—ASSIGNMENT OF LEASE BY LESSEE—MISREPRESENTATIONS—FINDINGS—EVIDENCE.—In this action to recover a sum of money paid by assignees of a lease in consideration for the assignment of said lease to them by a lessee on the ground of the latter's fraudulent misrepresentation, the findings of the trial court to the effect that said lessee represented to said assignees that she was the owner of the lease and could sell it and that she was ready and able to transfer the lease free and clear of any encumbrance and without any let or hindrance to the calm, quiet, and peaceful enjoyment thereof, and that such representations were false, were supported by the evidence.

[2] ID.—LEASES—ARBITRATION PROVISION IN REFERENCE TO ASSIGNMENT—ABSENCE OF ASSIGNABLE INTEREST.—The assignees in such action were not required to resort to the remedy by means of the arbitration provision contained in the lease to the effect that in the event the lessee "desires to transfer this lease and the [lessor] shall fail, or refuse to give his consent to the transfer, then each party hereto shall appoint one person and the two so appointed shall appoint a third party and whatever decision these three come to shall be final," where at the date of the purported assignment the lessee had no assignable interest in the lease.

[3] ID.—JUDGMENT BY LESSOR AGAINST LESSEE—FINALITY OF—FINDING—EVIDENCE.—In such action, the finding of the trial court that a judgment, restoring possession of the leased premises to the lessor, given in an action by the latter against the lessee, had become final at the time of the trial of the present action was supported by the evidence.

[4] JUDGMENTS—ENTRY—NOTICE.—The finality and binding effect of judgments does not depend upon notice of entry, nor even upon the fact of entry.

[5] ID. — JUDGMENT-ROLL — JUDICIAL RECORD. — The term "judgment-roll" is the equivalent of the expression "judicial record" when the latter is employed as referring to a judgment and the proceedings leading up to it.

---

(1) 35 C. J., p. 1003, sec. 112.   (2) 35 C. J., p. 1003, sec. 112 (Anno.).   (3) 35 C. J., p. 1003, sec. 112.   (4) 34 C. J., p. 54, sec. 182, p. 61, sec. 190.   (5) 34 C. J., p. 82, sec. 223.

1.  See 15 R. C. L. 749.
4.  See 14 Cal. Jur. 937; 15 R. C. L. 578.
5.  See 2 Cal. Jur. 484.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Benjamin W. Shipman for Appellant.

C. L. Belt and A. E. Hamilton for Respondents.

WORKS, J.—One Beach, whose successor in interest was one Haas, demised to one Jaus a certain apartment house under a written lease which contained a provision that the lessee was "not to sublet the whole of said premises, nor to assign or transfer this lease . . . without the written consent" of the lessor. The instrument also contained a clause reciting that "it is hereby agreed by and between the parties hereto, that in the event that the [lessee] desires to transfer this lease and the [lessor] shall fail, or refuse to give his consent to the transfer, then each party hereto shall appoint one person and the two so appointed shall appoint a third party and whatever decision these three comes to shall be final." Thereafter, by indorsements on the lease, Jaus assigned it to two parties of the name of Hoff, the Hoffs assigned it to Annette Mohr, and Mohr assigned it to Charles H. Powell and Maud Humfreville. Each of these successive assignees, or groups of assignees, took possession of the property immediately following the assignment to him or to them. Powell and Humfreville commenced the present action for the purpose of recovering the sum of $750, alleged to have been paid by them to Annette Mohr as a consideration for her assignment to them. The recovery was sought on the ground of fraudulent misrepresentation. J. M. Erickson was the broker who negotiated the assignment and he was made a defendant under allegation that he was a party to the misrepresentation. Judgment went against both defendants for the amount prayed. Defendant Mohr alone appeals.

[1] The trial court found that Erickson and appellant represented to respondents that appellant was the owner of the lease and could sell it. It was specially found as to appellant that she represented to respondents that she "was

ready and able to transfer" the lease "free and clear of·
any encumbrance and without any let or hindrance to the
calm, quiet and peaceful enjoyment thereof." It was also
found that all these representations were false. Appellant
contends that the findings mentioned were not supported by
the evidence. None of the successive assignments of the lease
was consented to by Haas before it was made, but he in effect
ratified the first assignment, that to the Hoffs, by a letter
which he wrote soon after they took possession of the prop-
erty. Appellant contends that this circumstance destroyed
the legal effect of the clause of the lease requiring a consent
of the lessor to assignments, although we need not decide
whether it so operated, for respondents assume the correct-
ness of appellant's contention for the sake of argument
and justify the findings as to misrepresentation upon other
grounds. These grounds rest upon the following evidence:
At the time appellant made the assignment to respondents
there was a controversy between her and Haas upon the
question whether she was in default in the payment of cer-
tain installments of her rent under the lease. The instru-
ment provided that "if any rent shall be due and unpaid,
or if default shall be made in any of the covenants herein
contained, then it shall be lawful for the [lessor] to re-enter
the said premises and remove all persons therefrom." At
the date of the assignment to respondents the controversy
between appellant and Haas over the alleged past due rents
had actually ripened into litigation, for he had before that
time commenced in the superior court his action against her
for the purpose of ejecting her from the demised premises
because of the alleged nonpayment. Appellant knew that
the action was pending, but during the negotiations leading
up to the assignment she concealed the fact from respond-
ents. Not only so, but she told them that "it was a good
lease," and that she had "a good lease of four or five years,"
the lease on its face having in fact then over four years to
run. The assignment was made September 2, 1919. With
this latter fact in mind we quote from the testimony of
respondent Humfreville: "Q. When was the first time you
learned of that suit? A. The next morning after we paid
her the money. . . . Q. That would be on the 3rd of Sep-
tember, would it? A. . . . Yes. . . . Q. How did you learn

that? A. Well, there were painters painting the house, and the painter told me, Mr. Brown . . . Mr. Powell had gone downtown, and I waited till he came home, and I told him, and we wanted to find out about it, and I went in and told Mrs. Mohr not to move out. She had stayed all night, and I told her not to move out till we found out about it. . . . I went in there and asked her about it, and she just said, 'Is that so? Is that so?' That is all she woulu say. So I said, 'Well, don't make any—don't do any more towards moving out till we find out about it.' . . . She went in the room and made arrangements to move. She collected her little trunk, and her little boy carried it out, and I went out to the doorway and told her not to take it out. She just pushed me aside and carried it out anyway; while she was out I locked her door, and I sat down by the door and I sat there for quite a little while. She came back in; she came back to it, she was going in, and I forbid her to go near the door; she went away and in a little while I opened the door and she had taken her clothes out the window. . . . She just moved out, lifted her clothes out the window.'' This testimony, it is true, relates to occurrences after it may probably be said with truth that the deal between the parties had been closed, but appellant had not yet left the premises and she was thus given the opportunity to make the reparation to respondents which in strict morals was due from her. Under all these circumstances, the evasive character of her answers to Mrs. Humfreville's questions, and her conduct when asked about the suit, show her fraudulent intent in making the representations to the effect that she held a good lease. It finally transpired that Haas was successful in the action which he had commenced against appellant. The judgment rendered in his favor recited that ''the defendant and all persons holding under her or claiming to hold under her are forever barred from asserting any rights in and to the property herein described, and it is adjudged that the plaintiff do have and recover the exclusive possession of said premises.'' This array of evidence amply supports the findings of the trial court upon the subject of the alleged misrepresentations.

[2] In her attack made upon the findings just mentioned appellant contends that respondents should have resorted to

the remedy by means of arbitration which is provided for in the lease in the event of a refusal of the landlord to consent to an assignment. We cannot perceive how this contention bears any relation to the question whether appellant made fraudulent misrepresentations to respondents. Granting, however, that it does, there are several answers to the contention, only one of which need be noted. The result of the litigation between Haas and appellant demonstrates that at the date of the purported assignment to respondents appellant had no assignable interest in the lease, for the suit was based upon an alleged breach of the terms of the instrument occurring before the assignment was made. Manifestly, the clause concerning arbitration could have had no application except in the case of an assignment made by an actual tenant under the lease, one who was in good standing under it and who had a transferable interest in it. The provision was not designed to settle the question whether a tenant had power to assign, but whether a purported assignee should take under an assignment. Appellant urges her contention as to the arbitration clause of the lease in assaults which she makes upon other findings of the trial court, but what we have here said will suffice to dispose of the question wherever it arises.

[3] The trial court found that the judgment in the action between Haas and appellant had become final at the time of the trial of the present action, and it is contended that the finding is without support in the evidence. We doubt, but do not decide, whether the finding in question was a material one, for the mere pendency of such an action, if the fact had been made known to respondents, might well have deterred them from dealing with appellant, in view of the consequences possibly to follow from a judgment at any time to be rendered therein unfavorable to appellant. This question we leave, as we are satisfied that the finding is supported by the evidence. Appellant's specific point is that the record fails to show that the judgment was ever entered, in that it "contains no notice of the entry of the judgment as provided by statute." [4] Such a showing was not necessary, as the finality and binding effect of judgments does not depend upon notice of entry, nor even, it appears, upon the fact of entry. It has been said that, where find-

ings and decree were signed by a judge, it "was then, and thereafter, the ministerial duty of the clerk to enter and docket the judgment, and to prepare and file the judgment-roll, . . . and, he could not, by neglecting to perform that duty, destroy or impair the effect of the judgment" (*Baker v. Brickell*, 102 Cal. 620 [36 Pac. 950]). It is true that for certain purposes it is necessary that notice of the entry of a judgment 'be given to a losing litigant. For instance, a defeated party must file his notice of intention to move for a new trial "either before the entry of judgment or within ten days after receiving notice of the entry of the judgment, or within ten days after verdict, if the trial was by jury" (Code Civ. Proc., sec. 659). Such provisions as this surely cannot affect the evidentiary value of a judgment when offered in another action. "A judicial record of this state, or of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or other person having the legal custody thereof" (Code Civ. Proc., sec. 1905), and there is nowhere any provision to the effect that a notice of entry of judgment is part of a "judicial record." [5] Especially, it is to be noted that such a provision is not to be found in the section of the code (Code Civ. Proc., sec. 670), which specifies what papers shall constitute the judgment-roll, this term of course being the equivalent of the expression "judicial record," when the latter is employed as referring to a judgment and the proceedings leading up to it. (See *Wickersham* v. *Johnston*, 104 Cal. 407 [43 Am. St. Rep. 118, 38 Pac. 89]; *Page* v. *Garver*, 5 Cal. App. 383 [90 Pac. 481].) It is true, beyond a doubt, that if the judgment here in question bore such a date at the time it was offered as to show that it had not ripened to finality under the statute preventing such ripening until the lapse of sixty days from its entry, the time within which appeals from final judgments must be taken (Code Civ. Proc., sec. 939), it could not have been received in evidence, but appellant makes no such point, nor does she contend that the judgment was not actually entered, nor that the record does not show that it was entered. As a matter of fact, the judgment was offered in evidence more than two years after its date. Not only so, but the certificate of the county clerk to the judgment-roll of which it is a part, and which was offered in its en-

tirety, contains the recital, "I . . . do hereby certify the foregoing to be a true copy of the judgment entered in the above entitled action, and recorded" at a certain page of a specified judgment-book. These considerations serve effectually to dispose of appellant's point that the offer of the judgment was not accompanied by a notice of its entry.

Other points are made by appellant, but they are disposed of by what we have said as to the questions above discussed.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.