[Civ. No. 7582. Second Appellate District, Division Two.—February 26, 1931.]

F. W. BECKER, Respondent, v. THE HIGHBOY COASTER TRUST (a Common-Law Trust) et al., Appellants.

LENA BECKER, Respondent, v. THE HIGHBOY COASTER TRUST (a Common-Law Trust) et al., Appellants.

Howard F. Shepherd for Appellants.

Samuel J. Crawford for Respondent.

CRAIG, J.—Two actions were brought in the Superior Court of Los Angeles County, praying that the plaintiffs' title to certain shares in a common-law trust be quieted as against the trustees thereof; judgments were rendered in favor of the plaintiffs, and the defendants appealed.

A common-law trust, designating F. L. Stineman, Charles Paige, L. H. Hendricks, F. W. Kasl, and S. F. Woody, as trustees, was created for the purposes of financing, constructing and operating an amusement enterprise, to be capitalized at $100,000, represented by certificates of shares of the value of $100 each. Said trustees Paige and Stineman were also named among the beneficiaries, and recorded in the declaration of trust as the owners of 150 shares and 250 shares respectively, subject to conditions and covenants of the parties hereinafter mentioned. Stineman transferred to the trust a leasehold interest in the premises upon which the structure was to be erected, together with his interest in a contract with Paige wherein the latter agreed to construct and deliver to Stineman· "fully equipped and ready for operation, with all bills checked and approved, and free from all liens, incumbrances and liabilities, except as shown by said approved bills", the structure in question; and that

for the performance of said contract Stineman would pay all bills for material and labor, and would transfer to Paige a 3/20 interest in the business trust heretofore mentioned. It was also agreed in the contract between these two parties that if the cost of construction should exceed the sum of $40,000, the difference should be paid by Paige, said 3/20 interest was expressly pledged as security for any such excess, to "be sold if necessary and so much of the sale price as is necessary shall be applied to the performance of this agreement". By the terms of the declaration of trust it was provided that "the title to every several item of the property constituting the trust estate shall have no legal or equitable right, title or interest in or to any several item thereof. The right of the beneficiaries shall relate only to the distributable proceeds of the trust." And, further, that "the interests represented by the certificates may be transferred on the books of the trustees by the person named therein or his legal representative, upon the surrender of the certificate, and a new certificate shall be issued to the transferee, who shall then become a beneficiary". Each such certificate was made "subject to provisions of the declaration of trust" deposited in escrow with a named bank, and "transferable only subject to the provisions of said declaration of trust, hereby referred to and made a part of this certificate". Pursuant to a recital in writing of the foregoing facts and a petition that a certain number of shares be issued to Stineman, Paige and other trustees and beneficiaries, certificates were issued by permission of the corporation commissioner and by his direction were placed in escrow under instructions which expressly stated that the same were issued, and should be held, by the bank, as escrow-holder, subject to the commissioner's order. It is conceded that certificates representing such issued shares are still in escrow, as well as in trust. It appears that following the commencement of construction work, a dispute arose as to the right of either Stineman or Paige to their shares, on account of certain asserted irregularities; that thereafter, acting upon information that Becker, respondent herein, contemplated the purchase of the shares of these two directors, certain other trustees informed Becker of the facts and of their contention that the consideration therefor had failed, that the purported bene-

ficial interests of Stineman and Paige were void, and that the trustees would contest any claim of either, or of their assignees, to such interests. Subsequently, however, Stineman and Paige each executed a "transfer of certificates on the declaration of trust", "subject to the terms and conditions of escrow . . . under which said certificates are held" to the Beckers, and the same were accepted by them "subject to all the terms and conditions of the said escrow". At a still later date the trustees declared these certificates to be voided and canceled, and passed a resolution to that effect, copies of which resolution were forwarded to the escrow-holder, to the corporation commissioner, and to Stineman, Paige and Becker. As grounds for such action it was recited that the two assignors had "not assisted in the promotion of the enterprise represented by this trust in the good faith with which they agreed to aid in this matter, but on the contrary wrongfully used and diverted in violation of their trust property to the value of many thousands of dollars; and . . . the consideration for the agreement to issue said stock and the issuance of the same was that the said Stineman and Paige would carry out certain agreements and would devote their best efforts to the welfare of this trust . . . all of which they have failed to do". From the foregoing it is apparent that the subject matter of the attempted assignments, if any existed, was legally in possession of the trust estate which in turn placed it in trust with an escrow-holder, to be delivered to the purchasers under certain conditions specified by the commissioner of corporations, when earned; and which conditions the trustees contended had not been performed. It is insisted by respondents that the diverted moneys of the trust were refunded and that this constituted a sufficient compliance with all conditions precedent to the transfer and delivery of the disputed interests; and by agreement in writing which was introduced in evidence, the trustees agreed to transfer to Stineman certificates of the value of $1500 in consideration of such refund. However, appellants do not concede that all of the conditions were performed. In fact said agreement expressly states that its execution does not preclude the trustees from asserting any claim or claims that they may believe they have against Stineman and Paige, or either of

them, and that in the event of such claims the latter shall receive proportionate credits for the amount so refunded.

■ Thus there is presented a grave doubt as to respondents' right to an equitable interest in said shares, the legal title to which is unquestionably in the trustees, under escrow conditions which may never be fulfilled. It is too elementary to require the citation of authority that an assignee can acquire no greater or better title than that of his assignor. It is equally certain that the record before us entitles neither Stineman nor Paige to assert the right to possession or ownership of the beneficial interests in question. Yet their assignees appearing in equity attempt not to remove a cloud upon or quiet their title thereto, but to contest the legal title upon a mere claim of equitable title which is disputed, and thereby to acquire possession. *Harrigan* v. *Mowry,* 84 Cal. 456 [22 Pac. 658, 660, 24 Pac. 48], presented a similar suit by one whose equitable title was unchallenged. It was there said of the plaintiff in the opinion of the court in bank:

"Her object was not to declare the title as it really was, which is the effect of a successful action to quiet title. Her purpose was to change the title and vest in herself the legal title that was outstanding in her trustee. This could not be done by an action to quiet title. The proper action would have been one to close up the trust, or to show that it had been closed, and to compel a conveyance of the legal title. It can make no difference that the reasons of the defendant for withholding a conveyance were insufficient, or even unreasonable, as claimed. The court below could not, nor can we, declare that she has no title, because she should in justice have conveyed it to the plaintiff."

Observations of the Supreme Court in a previous department decision of the same case are here appropriate:

"The finding that the plaintiff was the owner of the lots is not justified by the evidence. Conceding that plaintiff was in possession, and that possession is *prima facie* evidence of ownership, yet such *prima facie* evidence was rebutted and entirely overcome by the trust deed, and other evidence introduced by the plaintiff, showing that defendant and Haskell held the legal title.

"For the same reasons, the finding that the 'defendant has not any estate, right, title, or interest whatever in said land or premises, or any part thereof' is unsupported by the

evidence. Nor is there any evidence that the defendant claimed any interest in the land adverse to the title of plaintiff. It appears that the defendant rightfully claimed that she and Haskell held the legal title as trustees for the plaintiff; but their legal title, as such trustees, was not adverse to the title of the plaintiff as sole beneficiary—the only title proved in her.

"But conceding, without deciding, that the plaintiff was entitled to a conveyance of the legal title, and that defendant wrongfully refused to convey it, an action to quiet title under section 738 of the Code of Civil Procedure was not appropriate, nor even permissible."

 Assuming for present purposes only, and not deciding, that the respondents' assignors had fully complied with all precedent requirements to the issuance and delivery to them or to their assignees of certificates representing the shares which they claim, the instant proceeding would not entitle them to such relief. "In an action to quiet title the relief sought in the case at bar could not be obtained. This action, being to enforce a trust, and compel a conveyance, proceeds on the theory that the legal title is in the defendant, whereas a suit to quiet title ordinarily proceeds upon a contrary theory, and cannot be maintained against the holder of the legal title." (*South San Bernardino Land & Imp. Co.* v. *San Bernardino Nat. Bank*, 127 Cal. 245 [59 Pac. 699, 700].)

Holding as above indicated, it is unnecessary to consider other questions presented.

The judgments are reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.