WILLIARD ET AL., RESPONDENTS, *v.* CAMPBELL ET AL., APPELLANTS.

(No. 6,835.)

(Submitted November 5, 1931. Decided March 2, 1932.)

[11 Pac. (2d) 782.]

494

*Mr. Homer G. Murphy, Messrs. Hurd, Hall & McCabe* and *Mr. Edmund Nichols,* the latter of the Bar of Los Angeles, California, for Appellants Stevenson Associated Royalties Company and Montana-Wyoming Royalty Company, and *Mr. E. K. Cheadle, Jr.,* for Appellant Leon M. Bolter, submitted an original and a reply brief; *Mr. E. J. McCabe* argued the cause orally.

*Mr. J. A. McDonough, Mr. John W. Coburn* and *Mr. Donald Campbell* (of Counsel), for Respondents Nina E. Bishop, M. B. Gagel and Charles Carew, submitted a brief; *Mr. Campbell* argued the cause orally.

*Mr. A. A. Booth,* of the Bar of Seattle, Washington, for Respondent Helen M. Campbell, submitted a brief.

*Mr. Jess H. Stevens,* for Respondent Faye Springmyer, submitted a brief.

*Mr. Louis P. Donovan* and *Messrs. Belden & DeKalb,* for Cross-appellants and Respondents Harry O. Williard, C. W. Hay and W. W. Wheaton, as Trustees of the Gordon Campbell-Kevin Syndicate, a common-law trust, and Gordon Campbell-Kevin Syndicate, a common-law trust, submitted a brief; *Mr. Donovan* and *Mr. H. Leonard DeKalb* argued the cause orally.

HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. JUSTICE FORD, disqualified, delivered the opinion of the court.

Plaintiffs below, cross-appellants here, brought this action against the defendants to quiet title to a leasehold interest in the W. ½ E. ½, N. E. ¼ N. E. ¼, S. E. ¼ S. E. ¼, Sec. 25, Tp. 35 N., R. 3 W., Toole county. The defendants ·Ohio

Oil Company, International Refinery, Gordon Campbell, C. T. Gregg and Wallace Investment Company defaulted. The defendants Stevenson Associated Royalties Company and Montana-Wyoming Royalties Company (named in the complaint as Gordon Campbell Royalties Company), in their amended answers, and the defendants Nina E. Bishop, Leon M. Bolter, Charles Carew, M. B. Gagel, Faye Springmyer and Helen M. Campbell in their answers claimed certain royalty interests in the oil and gas produced and to be produced from said land. The defendants J. T. Benjamin, O. B. Nelson, R. D. McDaniel, I. W. Hanson and A. W. Simon also answered, but claimed no interest in the property or its mineral products adverse to the plaintiffs. New matter in said amended answers and in the answer of said Bishop was met by appropriate replies on the part of the plaintiffs.

The court tried the case without a jury, made findings of fact and conclusions of law, and rendered its judgment in accordance therewith. In the judgment it was decreed that the defendants Gordon Campbell, Gordon Campbell Royalties Company, now Montana-Wyoming Royalties Company, Stevenson Associated Royalties Company, O. B. Nelson, R. D. McDaniel, C. T. Gregg, I. W. Hanson, Leon M. Bolter, Wallace Investment Company, A. W. Simon, J. T. Benjamin, Ohio Oil Company and International Refinery have no interest in the land and no right to any oil or gas saved and recovered therefrom, that plaintiffs' title to the land, as against the claims of said defendants, be quieted, and that the defendant Helen M. Campbell do have and receive 2 per cent., and the defendants M. B. Gagel, Faye Springmyer, Nina E. Bishop and Charles Carew do have and receive 1 per cent. each of the oil and gas saved and recovered therefrom. The defendants Leon M. Bolter, Gordon Campbell Royalties Company and Stevenson Associated Royalties Company have appealed from the judgment. The plaintiffs have appealed from so much of the judgment as grants the defendants Gagel, Springmyer, Bishop, Carew and Helen M. Campbell affirmative relief.

The transactions out of which this suit arose are, to say the least, complicated. It appears from the record that on June 15, 1920, one Gabriel Kundert, being then the owner in fee simple of the land, executed to the defendant Gordon Campbell an oil and gas lease covering the E. $\frac{1}{2}$, S.W. $\frac{1}{4}$, Sec. 5; W. $\frac{1}{2}$, Sec. 8, Tp. 35 N., R. 1 W.; E. $\frac{1}{2}$, Sec. 25, Tp. 35 N., R. 3 W., M. P. M., situate in Toole county. The lease was for a term of twenty years and so much longer thereafter as oil, gas or other minerals should be found in paying quantities in the demised tract. Under its provisions Campbell agreed to deliver to Kundert $12\frac{1}{2}$ per cent. of the oil produced and saved from the premises or to pay him its market value, and also agreed to pay him a sum equal to $12\frac{1}{2}$ per cent. of the value of all gas marketed therefrom. On April 2, 1921, Gordon Campbell, Helen M. Campbell and L. C. Stevenson executed what was called an "agreement and declaration of trust," the apparent purpose of which was to facilitate the acquisition and exploitation of oil and gas fields in Montana for the benefit of shareholders who might thereafter become interested in the enterprise. The instrument stipulated, among other things, that the trustees of the trust should always be three in number and should in their collective capacity be designated as trustees of the Gordon Campbell-Kevin Syndicate. On January 19, 1921, Petters & Company, a corporation instituted suit in the district court against Gabriel Kundert and his wife, Rosina Kundert, First International Bank of Sweet Grass, a corporation, Gordon Campbell and Toole county, to foreclose a mortgage of the leased property executed on February 13, 1916, by the Kunderts to Petters & Company. All the defendants were served with summons, and on May 19, 1921, the court made its decree foreclosing the mortgage, ordering a sale of the premises to satisfy the debt, and holding that the rights of the defendants thereto were inferior to the lien of the mortgage. On June 19, 1921, the property was sold at decretal sale, and thereafter the First International Bank of Sweet Grass, being a junior mortgagee, redeemed the same from Petters & Company, the purchaser.

498

. On December 20, 1921, Gordon Campbell and wife assigned to Gordon Campbell-Kevin Syndicate the Kundert lease and other leases, affecting altogether 14,320 acres of land in Toole county, but Campbell in effect reserved to himself an overriding royalty of 15⅖ per cent. of the oil and gas produced and saved from the land. On May 20, 1922, Gordon Campbell and wife executed to Gordon Campbell-Kevin Syndicate a so-called corrected assignment which was intended to, and did, displace the original assignment, and which covered approximately 15,000 acres of land in said county, at the same time reserving to themselves 7½ per cent. of the oil and gas produced and saved therefrom. The instrument merely transferred to the assignee all the right, title, and interest held by the assignors in the land and the oil and gas therein on December 20, 1921, and was expressly made subject to the terms and conditions of the leases described therein. So far as the Kundert lease was concerned, the corrected assignment embraced only that part of the demised premises first above described. On May 20, 1922, Gordon Campbell and wife assigned to L. C. Stevenson all their right, title, and interest in and to 40 per cent. of the oil and gas reserved to them under the terms of the corrected assignment, and thereafter, on August 2, 1922, Stevenson and wife assigned to Stevenson Associated Royalties Company the interest thus acquired. On June 24, 1922, Gordon Campbell and wife assigned to Gordon Campbell Royalties Company all their right, title, and interest in and to 26⅔ per cent. of the oil and gas reserved to them under the terms of the corrected assignment. On July 28, 1922, Gordon Campbell and wife, and later on the same day Gordon Campbell alone, transferred to Producers' Operating Company all their interest in oil and gas royalties from lands situate in a number of townships in Toole county, including township 35, in range 3. On February 17, 1923, Gordon Campbell and wife and Gordon Campbell doing business under the fictitious name of Producers' Operating Company, assigned to S. S. Ford, trustee, all their right, title, and interest in and to 33⅓ per cent.

of the oil and gas reserved to them under the terms of the corrected assignment in so far as the same covered that part of the tract demised by Kundert which is first above described. Through mesne transfers, or otherwise, R. D. McDaniel ultimately held $^{53}/_{150}$, Leon Bolter $^1/_5$, O. B. Nelson $^{23}/_{150}$, I. W. Hanson, $^2/_{15}$, A. W. Simon, $^1/_{10}$, and Wallace Investment Company $^3/_{50}$ of the royalty interest of S. S. Ford, trustee.

The record further discloses that on April 1, 1922, Gabriel Kundert and wife deeded to their son, Fred Kundert, the E. ½ of Sec. 25, and that on the same day Fred Kundert deeded the property to W. R. C. Stewart and C. E. Carlson. On June 17, 1922, Stewart and Carlson redeemed it from the First International Bank of Sweet Grass, and thereafter, on November 29, 1922, they and their wives executed to Gordon Campbell an oil and gas lease covering the same and containing the usual reservations in favor of the lessors as to oil and gas produced. The life of the lease was ten years and so much longer thereafter as oil and gas should be produced from the premises demised. On May 25, 1923, Gordon Campbell assigned to Gordon Campbell-Kevin Syndicate the Stewart and Carlson lease in so far as it embraced the land first above described, reserving to himself, however, 7½ per cent. of the oil and gas produced therefrom. On December 24, 1923, Gordon Campbell by separate instruments assigned to M. B. Gagel, C. A. Springmyer, and Nina E. Bishop each 1 per cent., and on January 2, 1924, assigned to Helen M. Campbell 2 per cent., of the oil and gas produced and saved from said land under the Stewart and Carlson lease. On March 29, 1924, Gordon Campbell-Kevin Syndicate and Campbell Oil Company, a corporation, assigned to Charles Carew 1 per cent. of the oil and gas produced and saved from said land under the Stewart and Carlson lease. On or about March 18, 1924, Campbell Oil Company assumed the right to assign, and did assign, to H. E. Benjamin 1 per cent. of its portion of the oil and gas produced and saved from the N.½ N. E. ¼ of Sec. 25, and thereafter H. E. Benjamin transferred

such interest to J. T. Benjamin. Finally, on July 30, 1924, C. A. Springmyer assigned his said royalty interest to Faye Springmyer.

In the course of the year 1924, a well was sunk and oil struck in paying quantities on the 240-acre tract heretofore mentioned and described; hence this strenuously contested litigation. We may add at this point, in order to complete this somewhat extended narrative, that all the assignments and other instruments hereinbefore mentioned were recorded in the office of the county clerk of Toole county in the order of their execution, except the assignment from Gordon Campbell and wife to Producers' Operating Company, which was merely filed therein, and that on November 27, 1922, Campbell executed a release of the Kundert lease and the same was on November 14, 1924, filed for record therein.

Counsel for some of the parties before this court have ably ██ and at much length discussed the effect of the sale of the Kundert premises under the decree of foreclosure. The rule is well established in Montana and elsewhere, however, that a sale of real property made on the mandate of a decree of foreclosure divests the mortgagor of his title and vests the same in the purchaser. (Sec. 9441, Rev. Codes 1921; *Lepper* v. *Home Ranch Co.,* 90 Mont. 558, 4 Pac. (2d) 722; *Huntington* v. *Perrin,* 65 Cal. App. 20, 223 Pac. 94; *Metcalf* v. *Phoenix Title & Trust Co.,* 33 Ariz. 13, 57 A. L. R. 1015, 261 Pac. 633; 42 C. J. 245, 246; 19 R. C. L. 625.) Thereafter the mortgagor is left only the right to redeem. (*Lepper* v. *Home Ranch Co.,* supra; 42 C. J. 352.) W. R. C. Stewart and C. E. Carlson having in effect purchased the right of redemption from Gabriel Kundert and Rosina Kundert, they, thereupon, became their successors in interest and as such were entitled to redeem, as they did, the E. ½ of section 25 from the International Bank of Sweet Grass. (Sec. 9442, Rev. Codes 1921; *McQueeney* v. *Toomey,* 36 Mont. 282, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561; *Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 717; *Brown* v. *Timmons,* 79 Mont. 246, 57 A. L. R. 1122, 256 Pac. 176.) They ac-

quired no new title, however, as a consequence of the redemption, but were restored thereby to the estate of the mortgagors, freed only of the encumbrance of the lien foreclosed and of the lien of the junior mortgage, as no deficiency resulted from the sale itself. (*McQueeney* v. *Toomey*, supra; *Dipple* v. *Neville*, 82 Mont. 280, 267 Pac. 214; *Kilpatrick Bros. Co.* v. *Campbell*, 48 Idaho, 194, 281 Pac. 471; 42 C. J. 451–453; 18 Cal. Jur. 599.) The sale in its relation to the Kundert lease will be briefly considered further on in a more fitting place.

The Kundert lease, as we have seen, was executed on June 15, 1920, and in it Gordon Campbell agreed "to commence a well" on the demised premises within three years and to "commence drilling operations for oil on what is known as the Rocky Ridge Dome on or before Feb. 15th, 1921." It provided, also, "that in case of the default of the party of the second part [Campbell] in the performance of any of the terms or conditions of this lease that the said party of the second part shall execute and deliver, within thirty days after demanded, a full discharge, satisfaction and release of the party of the first part [Kundert] from all the terms and obligations of this lease and option to purchase and all the obligations thereof." Campbell, who was called as a witness by the plaintiffs as well as by some of the defendants, testified, in substance, that the leased property is on the Rocky Ridge Dome, that he did not commence drilling for oil on the dome until April 15, 1921, when sinking of the test well was begun on land in section 16 belonging to Albert Goeddertz, and that on or about this day Kundert demanded the return of his lease and served him with written notice of cancellation thereof because of his failure to start such drilling within the specified time. This testimony went uncontradicted. Besides, there was no evidence of waiver on the part of the lessor.

The trial court found that Campbell breached the lease, in that he "failed to commence drilling operations on what is known as Rocky Ridge Dome on or before February 15, 1921," etc., and that Kundert because of the breach canceled the

same, and in effect concluded therefrom that any rights which attached to the lease were terminated and annulled. Apparently counsel who respectively represent the appellants do not contend that the evidence does not support the finding or that the conclusion so drawn is not correct, unless the doctrine of estoppel has been successfully invoked against the plaintiffs.

Appellants Gordon Campbell Royalties Company and Stevenson Associated Royalties Company, in their separate amended answers, attempted to plead facts showing quasi estoppel, in that the plaintiffs some time after May 25, 1923, accepted from the former the sum of $15, and from the latter the sum of $22.50, claimed to be due on account of their respective interests in the Stewart and Carlson lease, and in that it was understood and agreed between the plaintiffs and the former when it made the payment of $15 that ever since June 24, 1922, it was the owner of 2 per cent. of the oil and gas produced from the demised land, and between the plaintiffs and the latter when it made the payment of $22.50 that ever since June 30, 1922, it was the owner of 3 per cent. of the oil and gas produced therefrom.

At the beginning of the trial appellant Bolter requested leave to amend his answer so as to make it appear that the plaintiffs with full knowledge of the circumstances acquiesced in all the terms and conditions of the Stewart and Carlson lease and of the assignment thereof, and accepted the benefits and profits of the lease for a period of three years before the commencement of the action, and therefore should be estopped from denying the validity of the lease, or of the assignment thereof, or of any royalties thereunder. In the joint brief of appellants it is assumed that leave to so amend was granted, but the record shows the court reserved its decision and never thereafter ruled on the application. No point is made in the brief, however, as to the effect of the estoppel as pleaded or of the estoppel sought to be pleaded. We do not think either stated enough facts. Certainly the evidence fell far short of establishing what may be termed estoppel by acceptance of benefits or what may be termed estoppel by

acquiescence. (21 C. J. 1202–1208, 1216–1218, 1247–1253.) But in the brief the question of estoppel of plaintiffs to assert an after-acquired title to real estate and of estoppel of plaintiffs by simple contract is argued at considerable length. Neither defense was pleaded. A party who desires to rely on estoppel of any kind must plead it (*Pue* v. *County of Lewis and Clark*, 75 Mont. 207, 243 Pac. 573; *Scott* v. *Jardine Gold Min. & Mill. Co.*, 79 Mont. 485, 257 Pac. 406; 21 C. J. 1242–1246), and, if he fails to do so, he is deemed to have waived it (*Conrow* v. *Huffine*, 48 Mont. 437, 138 Pac. 1094; 21 C. J. 1246). Appellants cannot present their case in this court on a theory different from that adopted in the trial court. (*United States Building & Loan Assn.* v. *Burns*, 90 Mont. 402, 4 Pac. (2d) 703; *Black* v. *Parisho*, 152 Okl. 70, 3 Pac. (2d) 673.) "Where a defendant relies upon a certain defense in the trial court, he will not be permitted to shift his ground of defense on appeal so as to present another defense not presented nor relied upon in the trial court." (*Collings* v. *Industrial Sav. Soc.*, 94 Okl. 271, 221 Pac. 1036, 1039.) To give adherence to any other principle would be unfair to the trial court and unjust to the other side, for it would deprive the one of the opportunity to consider, and the other of the opportunity to meet, such a defense. Before leaving the subject of estoppel it may be proper to add that, where one party makes an allegation, the truth of which he might afterwards be estopped from showing, and the other party takes issue on such allegation instead of relying on the estoppel, and the allegation be found to be true, judgment will be rendered without regard to the estoppel. (21 C. J. 1246, 1247.)

Appellants in their brief have urged, as a ground for reversing the judgment and granting them affirmative relief, that redemption by W. R. C. Stewart and C. E. Carlson from the foreclosure sale was made for the benefit of the assignees of Gordon Campbell under the Kundert lease, and that it was agreed between Stewart and Carlson on the one side, and Campbell on the other, that the interests of the assignees

would be retained and protected in the lease which the former would make to the latter. The record does not lend support to such a position. We find no evidence therein to justify the claim that redemption was so made or that any such agreement was reached. Certainly the agreement was not embodied in the Stewart and Carlson lease. It is true that, while Stewart and Carlson departed from Bozeman for Shelby on June 15, 1922, with the intention of effecting a redemption with their own money, in Great Falls on the 16th Campbell gave them $3,000 for the purpose, almost all of which was so used on the 17th; but it is also true that this sum was in the nature of a "bonus" for a lease to be subsequently executed by Stewart and Carlson to Campbell. It is worthy of note in this connection that the assignment from Campbell to the Gordon Campbell Royalties Company came after the redemption, and that the assignment from Campbell to Ford came after the execution of the Stewart and Carlson lease.

This court has often held in recent years that time is of the essence of the contract so far as an oil and gas lease is concerned, even though it be not so stated therein, and that a forfeiture is favored where the lessee has failed to begin operations within the time required by the lease. The reasons given and the arguments advanced to justify the position thus taken need not be repeated here. The contract of lease and the facts before us now, so far as they relate to the question of forfeiture, do not differ in any material respect from the contract of lease and the facts before the court in the case of *Solberg* v. *Sunburst Oil & Gas Co.*, 76 Mont. 254, 246 Pac. 168, and on the authority of that case and the case of *Bowes* v. *Republic Oil Co.*, 78 Mont. 134, 252 Pac. 800, we approve the finding and conclusion of the trial court. The Kundert lease being in form "an unless lease" was *ipso facto* terminated on February 16, 1921, for failure on the part of Campbell to comply with one of its most important conditions. (*McDaniel* v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582.)

Counsel for cross-appellants and counsel for respondents Bishop et al. have argued that the foreclosure sale brought about an immediate termination of the lease. If, as we have determined, the lease was terminated on February 16, 1921, by forfeiture, of course, it could not again be terminated on June 19, 1921, by the foreclosure sale. The rule contended for, were we to assume the lease as existent up to the latter date, appears to have the support of the great weight of authority (see 14 A. L. R. 664, note), but in /this state, because of peculiar statutory provisions, the rule is otherwise. Here a foreclosure sale does not terminate the tenancy created by an unexpired lease so far as the tenant is concerned, and, where it has a year or more to run, the tenant has the right to retain possession of the land during the period of redemption, and this though the lease be subsequent to the mortgage. (*Blodgett Loan Co.* v. *Hansen,* 86 Mont. 406, 284 Pac. 140; *Dolin* v. *Wachter,* 87 Mont. 466, 288 Pac. 616.) Doubtless, where the judgment debtor or his successor in interest redeems, the lessee, if the lease extends beyond the period of redemption, is restored to his original status.

In so far as the corrected assignment, which in fact was a sublease (*Homestake Exploration Corp.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388; *Sunburst Oil & Ref. Co.* v. *Callender,* 84 Mont. 178, 274 Pac. 834), dealt with the 240-acre tract already referred to and described, it could receive vitality only from the Kundert lease, but that, as we have seen, had ceased to function at the time such assignment was executed. Evidently, then, on May 20, 1922, and thereafter, Gordon Campbell and his wife had no interest whatever in the lease and could not make it the basis by sublease, or otherwise, of a contractual relation between themselves and the Gordon Campbell-Kevin Syndicate in respect to this tract. A sub- lease presupposes an existing lease and cannot stand without it. (35 C. J. 990.) Even in the case of a subsisting lease a forfeiture for breach of covenant or condition terminates it as to the assignee, and also terminates the estate of

a sublessee of the lessee or assignee. (*First National Bank of Columbus* v. *Coit*, 79 Mont. 468, 257 Pac. 469; *City Investment Co.* v. *Pringle*, 69 Cal. App. 416, 231 Pac. 355; 35 C. J. 1077; Summers on Oil and Gas, sec. 151.)

Equally ineffective were the assignments to L. C. Stevenson, Gordon Campbell Royalties Company, and S. S. Ford of interests in oil and gas produced from such tract and reserved to them under the terms of the corrected assignment. (*Solberg* v. *Sunburst Oil & Gas Co.*, supra; *Crowder* v. *James*, 110 Okl. 214, 236 Pac. 891.) The language of these assignments is clear and unambiguous. In each of them the assignee named is given a certain part of the oil and gas reserved to Campbell under the corrected assignment, and nothing more. Why the contract took that form in each instance is a matter of conjecture. Perhaps the parties concerned thought the Kundert lease had some efficacy all the time. Be that as it may, courts are without authority to make agreements for parties or to alter or amend those which the parties themselves have made. (*Frank* v. *Butte & Boulder Mining & Lumber Co.*, 48 Mont. 83, 135 Pac. 904.) Courts must take agreements as they find them, and, if the obligees are entitled to nothing, the courts have no power to award them something. Moreover, it has not been charged or shown that Campbell defrauded, or conspired with others to defraud, the appellants, or the predecessors in interest of some of them, or that a mistake of law or fact entered into the execution of the assignments. The rule is elementary that an assignment transfers to the assignee all the right, title and interest of the assignor in the property assigned, but does not ordinarily confer on the assignee any greater right, or give him any better title, than that possessed by the assignor. (*Le Porin* v. *State Exchange Bank*, 113 Kan. 76, 213 Pac. 650; *Becker* v. *Highboy Coaster Trust*, 112 Cal. App. 219, 296 Pac. 651; *Smader* v. *Columbia Wisconsin Co.*, 188 Wis. 530, 205 N. W. 816; 5 C. J. 945, 946.) Nothing will pass to the assignee if the thing sought to be transferred never existed or ceased to exist before the assignment was made. (*Penwell*

v. *Flickinger*, 46 Mont. 526, 129 Pac. 323; *Smith* v. *Pacific Bank*, 137 Cal. 363, 70 Pac. 184; *Powell* v. *Mohr*, 68 Cal. App. 639, 230 Pac. 27; *Newberry* v. *Chicago Lumbering Co.*, 154 Mich. 84, 117 N. W. 592; *Wilcox* v. *Crawford*, (Tex. Civ. App.) 231 S. W. 1104; *Le Porin* v. *State Exchange Bank*, supra; *Smader* v. *Columbia Wisconsin Co.*, supra; *Sponge Divers' Assn.* v. *Smith etc. Co.*, (C. C. A.) 263 Fed. 70; 5 C. J. 942, 963.) The defunct lease being, for present purposes, the defunct source of all rights which Campbell attempted to transfer or reserve, as the case may be, if he himself could not have recovered anything from the sublessee, it necessarily follows that the assignees of his royalty interests or their assignees cannot. (*Smader* v. *Columbia Wisconsin Co.*, supra.)

Appellants complain of the admission in evidence of a letter purporting to have been written by the Stevenson Associated Royalties Company to the Gordon Campbell-Kevin Syndicate, and of copies of letters and of a statement of rental charges and credits mailed by the lease department of the Campbell interests to L. C. Stevenson, and of the court's failure to strike the same from the record upon motion made. Assuming that the testimony was incompetent, it will be presumed that the court disregarded it in making its findings. (*State* v. *Driscoll*, 49 Mont. 558, 144 Pac. 153; *Montana A. F. Corp.* v. *Federal Surety Co.*, 85 Mont. 149, 278 Pac. 116.) In any event, in view of what we have already said about the defense of equitable or quasi estoppel, it could not have affected the result.

As it appears from the record before us, then, that plaintiffs had, and still have, a leasehold interest in the land involved, entitling them to drill for oil and gas thereon and take the same therefrom, on account of the assignment to them of the Stewart and Carlson lease to the extent above mentioned, that appellants assert the right, by virtue of the Campbell assignments and other acts and things, to receive a part of the oil and gas so taken, and that their claims are unfounded and adverse to plaintiffs' interest, the court was jus-

tified in decreeing that the title of plaintiffs be quieted as against appellants, and that appellants' claims to receive royalties from any production of oil or gas from said land be held for naught.

In closing this phase of the case, as it was determined that ▮▮▮▮ appellants should take nothing, we hold they cannot complain of error, if any, committed by the court in admitting evidence offered by the successful defendants in support of their claims. (*McIntyre* v. *MacGinniss*, 41 Mont. 87, 137 Am. St. Rep. 701, 108 Pac. 353; *Dayton* v. *McAllister*, 129 Cal. 192, 61 Pac. 913; *Milliken* v. *Martinez*, 22 N. M. 61, 159 Pac. 952; *Linch* v. *Perrine*, 51 Idaho, 152, 4 Pac. (2d) 353.)

In their position before this court, plaintiffs have practically conceded that the appellants, on the one hand, or the respondents Carew, Gagel, Springmyer, Bishop and Helen M. Campbell, on the other, are entitled to the royalty interests respectively claimed by them, depending on whether the Kundert lease or the Stewart and Carlson lease was in force at the time the action was begun. Having already decided that the Kundert lease was terminated by forfeiture on February 16, 1921, and that the Stewart and Carlson lease is a valid, subsisting lease, it now becomes our duty to give effect to the concession so made by holding, as we do, that these respondents are the owners of the royalty interests which they have claimed, and that the lower court ruled correctly in awarding them affirmative relief.

In the course of our examination of the record, a question ▮▮▮▮ of practice has forced itself on our attention. On the day the trial began and before the introduction of testimony, certain of the parties moved the court for leave to amend their pleadings and leave was accordingly granted. The amendments were never actually made. In order to avoid confusion and conform to the rules of good practice, they should have been made. (*Leggat* v. *Palmer*, 39 Mont. 302, 102 Pac. 327; 1 Bancroft's Code Pleading, sec. 560; 49 C. J. 548, 549; 1 Standard Procedure, 902.) In a few instances the court reserved its decision on applications to amend and never

ruled thereon. If counsel believed the amendments sought were of consequence to their clients, it was their duty respectfully to insist on an early ruling, favorable or otherwise.

The respondents are awarded their costs on appeal against the appellants Stevenson Associated Royalties Company and Gordon Campbell Royalties Company, and Leon M. Bolter. All other parties to this appeal will bear their own costs.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN AND MATTHEWS concur.

Rehearing denied June 10, 1932.