McDANIEL, RESPONDENT, *v.* HAGER-STEVENSON OIL
CO., APPELLANT.

(No. 5,796.)

(Submitted January 9, 1926. Decided February 8, 1926.)

[243 Pac. 582.]

*Oil and Gas—"Or" and "Unless" Leases—Termination—Contracts.*

Contracts—When not Subject to Construction.

1. Where a contract is plain and clear in its terms, neither interpretation nor construction is permissible, nor may resort be had to extrinsic circumstances under the pretense of ascertaining its meaning.

Oil and Gas—"Or" and "Unless" Leases—How Terminated.

2. Under an "or" lease of oil lands, the lessee must either drive a well within the exploratory period fixed or pay the rental prescribed; the forfeiture clause therein is for the benefit of the lessor, who if he desires to insist upon a forfeiture, must exercise his option and declare the lease forfeited; under an "unless" lease the lessee must commence to drill a well within a certain period or the lease becomes null and void unless he pays the lessor a certain amount per year in advance for each additional year until a well is commenced, and under this type of lease failure to drill or pay, *ipso facto*, terminates the lease, affirmative action on the part of the lessor to declare it forfeited being unnecessary.

Same—Contracts Optional in Respect of One Party—Construction.

3. When a contract is optional in respect to one party, it is to be construed strictly in favor of the party that is bound and against the one who is not bound.

Same—Leases—Construction—Time Essence of Contract.

4. Oil and gas leases must be liberally construed in favor of the lessor and strictly against the lessee, and time is of the essence of such contracts.

Same—Termination of "Unless" Lease—Lessor not Required to Declare Lease Forfeited.

5. Where the owner of land had entered into an "unless" oil and gas lease (see par. 2 above), the consideration paid being $1.00, and the lessee neither drilled a well nor paid rentals but permitted the lease to expire by limitation, his interest in the land ceased automatically without formal declaration of forfeiture by the lessor, and the latter was free to grant a new lease upon the same land to another lessee.

---

[1] Appeal and Error, 3 **C. J.**, sec. 1567, p. 1403, n. 58.  Contracts, 13 **C. J.**, sec. 481, p. 520, n. 5; sec. 969, p. 771, n. 56.  Reformation of Instruments, 34 **Cyc.**, p. 907, n. 32.

[2] Mines and Minerals, 27 **Cyc.**, p. 729, n. 79; p. 731, n. 93; p. 734, n. 20; p. 738, n. 53 New.

[3] Contracts, 13 **C. J.**, sec. 481, p. 521, n. 13.  Mines and Minerals, 27 **Cyc.**, p. 738, n. 53 New.

[4] Mines and Minerals, 27 **Cyc.**, p. 722, n. 43 New; p. 738, n. 53 New.

[5] Contracts, 13 **C. J.**, sec. 497, p. 536, n. 80; sec. 501, p. 538, n. 3. Mines and Minerals, 27 **Cyc.**, p. 739, n. 61.

1.  See 6 **R. C. L.** 841.
2.  See 18 **R. C. L.** 1213.
4.  See 18 **R. C. L.** 1214.

[75 Mont. 356.]

₀ *Appeal from District Court, Toole County, in the Nineteenth Judicial District; W. E. Carroll, a Judge of the Second District, presiding.*

CONSOLIDATED ACTIONS by John McDaniel against the Hager-Stevenson Oil Company. From a judgment for plaintiff in the first action, and on the first cause of action stated in the second action, and for defendant on its counterclaim in the second action, defendant appeals. Modified and affirmed.

*Mr. Homer G. Murphy* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted an original and a reply brief; *Mr. H. C. Hall* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment rendered in two actions which were consolidated for the purpose of trial. We shall, for convenience, refer to these as the first and second actions.

In the first action plaintiff sought recovery of the sum of $1,017 with interest, claiming that sum as a balance due for work, labor and services in building a water reservoir upon plaintiff's land for defendant. (The land was leased from plaintiff by defendant.) In its answer defendant admitted the employment of plaintiff and claimed the balance due to be $383 only. The defendant interposed a counterclaim based upon an alleged breach of a covenant to convey the land on part of plaintiff.

In the second action the complaint consisted of two causes of action. Under the first the plaintiff sought to recover $3,380.67, alleged to be due him by virtue of a contract in writing whereby defendant, in consideration of an oil and gas lease executed by plaintiff to defendant upon plaintiff's land,

engaged to pay off various liens, mortgages and taxes thereon. The second cause of action set forth in this complaint need not be considered as a jury found against plaintiff thereon.

Defendant, answering the second action, set up three defenses. The first ·defense admitted the execution of the contract in so far as it related to the payment of a mortgage in the sum of $2,300; admitted an agreement to pay all taxes which were liens upon the land. The second defense need not be noticed as it related to the second cause of action.

The third defense, together with a counterclaim, was directed to the entire complaint. Defendant alleged the employment of plaintiff to build· a reservoir and placed valuation upon the employment; alleged payment of various sums of money in consideration of the conveyance to it of oil and gas interests in plaintiff's land; alleged that such interests are without value by reason of the fact that plaintiff had given a prior lease upon the land which had not been canceled. Upon the counterclaim defendant sought to recover $2,298.86 and interest.

During the trial it was stipulated that plaintiff's causes of action should be deemed merged and consolidated into one complaint, setting forth three causes of action, and that the answers and counterclaim of the defendant in both actions should be deemed merged and consolidated into one answer, and counterclaim; and in the event that inconsistency between the answer and counterclaim interposed in the first action and that interposed in the second should appear, the latter should be controlling; also that the replies should be merged and consolidated into one.

The jury found for the plaintiff upon the cause of action stated in the first action, upon the first cause of action stated in the second action, and upon the counterclaim; found in favor of the defendant upon the second cause of action set forth in the second action. Judgment was entered accordingly. The defendant moved for a new trial which was denied. Thereafter the defendant appealed.

Counsel for defendant say that as the verdict of the jury in the first action was based upon conflicting evidence they will not undertake to overthrow it. They confine themselves to a discussion of the issues raised by the pleadings and evidence in the second action, but as the two were consolidated the ultimate result reached in the first is dependent upon the defense and counterclaim interposed in the second.

The specifications of error, when analyzed, say counsel for defendant, present two main issues as follows: (1) What is the proper construction of the agreement set forth in plaintiff's complaint and defendant's answer in the second action? (2) Was there a breach by plaintiff of his covenant of good right to convey?

The plaintiff on his part makes cross-assignments of error, which he asks us to consider under the provisions of section 9751, Revised Codes of 1921, which requires this court to consider, upon a record of this character, the errors assigned by respondent as well as those by appellant and to reverse or affirm the cause according to the substantial rights of the parties, as shown by the record. This we shall do, taking into consideration also section 8805, Revised Codes of 1921, which provides in part: "The supreme court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had."

1. The facts are that on November 11, 1922, the plaintiff and his wife executed to defendant an oil and gas lease on 320 acres of land for a term of five years from date, "and as long thereafter as oil, gas, hydrocarbons, or minerals is produced therefrom in commercial quantities, unless terminated earlier as hereinafter provided." The lease reserved to the lessors the usual royalties. Other provisions will be referred to later. Simultaneously with the execution of this lease the defendant made and delivered to the plaintiff the agreement which is in controversy. By its terms it was acknowledged that the true consideration for the lease was that defendant

agreed "to pay off and discharge, at its own expense, delinquent taxes upon said lands for the years 1920 and 1921, and also pay off and discharge that certain mortgage for $2,300 together with the unpaid interest thereon, which mortgage is now a lien upon said lands."

The fact is that on February 18, 1918, in order to secure a loan of $2,300, plaintiff had executed his promissory note in that amount payable in five years, with five six per cent interest coupons thereto attached, one of which came due on the first day of March of each year. To secure the payment of the same, plaintiff and his wife executed a mortgage upon the land. At the same time, and as a part of the same transaction, plaintiff executed five additional promissory notes, the amount of which was calculated upon the principal sum of two per cent thereof and these notes were in the sum of $46 each, except the first one, which was for $47.66. These notes were secured by what was called a second or commission mortgage on this same land.

Plaintiff contends that the true intention was, and it was within the contemplation of the parties in making the agreement, that the defendant should pay the second mortgage, as well as the first, and in his complaint he pleaded accordingly. He alleged that the agreement was drawn by defendant's counsel who represented to him that the agreement, as drawn, expressed the intention of the parties. While admitting the execution of the agreement and its drafting by defendant's counsel, defendant denied that there ever was any understanding that the second mortgage should be paid by it. The plaintiff did not ask for a reformation of the instrument but stood upon its terms. His counsel said to the court that he was not attempting to vary its terms: "I am attempting to show the circumstances under which it was executed, as an aid in its construction and interpretation. * * * " In order to substantiate his contention the plaintiff gave testimony tending to show that when the agreement was being discussed, he told Mr. Stevenson and Mr. Murphy, who represented the defend-

ant, that the amount of the loan upon the land was $2,300, and it bore interest at nine per cent. The mortgage was not produced. The plaintiff knew there were two mortgages, a first and a second, but he did not mention the second mortgage.

It is insisted that as plaintiff advised the defendant's representatives that the interest was nine per cent, they, especially Mr. Murphy, should have known there was a second mortgage. Mr. Murphy admitted upon cross-examination that when he drew the agreement he was aware of the general practice followed in the locality, under which the mortgagee took two mortgages, one for the principal with interest thereon at six per cent and a second mortgage for two, three or four per cent on the amount loaned, representing a commission on the loan. Mr. Murphy testified that when he was negotiating for the lease he did not know there was a second or commission, mortgage. ''Nothing whatever was said by either Mr. or Mrs. McDaniel about there being a second, or commission, mortgage.'' This testimony was corroborated by Mr. Stevenson; and it is not asserted by Mr. or Mrs. McDaniel that either ever mentioned the second mortgage. To sum up without further reference to the evidence: Plaintiff contends that as he told Mr. Murphy the mortgage drew interest at nine per cent, whereas it drew but six per cent and as Mr. Murphy knew the custom he should have known the other three per cent was included in a second mortgage. This is too far-fetched. The agreement provided that the defendant should ''pay off and discharge that certain mortgage for $2,300, together with the unpaid interest thereon, which mortgage is now a lien upon said lands.'' This is plain and unequivocal. It does not require any interpretation. It speaks a definite language. [1] A contract may not be changed or revised under the guise of interpretation. Where a contract is plain and clear in its terms, neither interpretation nor construction is permissible. (*Ming* v. *Pratt*, 22 Mont. 262, 56 Pac. 279; *Spaulding* v. *Maillet*, 57 Mont. 318, 188 Pac. 377.) When the lan-

guage employed by the parties "is free from ambiguity or uncertainty, it is beyond the power of the court to enlarge or restrict its application or meaning." (*Union Bank & Trust Co.* v. *Himmelbauer,* 56 Mont. 82, 181 Pac. 332.) And when the terms of a contract are plain and unambiguous, resort may not be had to extrinsic circumstances under the pretense of ascertaining its meaning. (*Purdin* v. *Westwood R. & L. Co.,* 67 Mont. 553, 216 Pac. 326; *Berne* v. *Stevens,* 67 Mont. 254, 215 Pac. 803.)

If through fraud or mistake the writing did not truly express the intention of the parties, it might, upon the application of the one aggrieved have been revised to express that intention (sec. 8726, Rev. Codes 1921), but no such application was made. Upon this phase of the case the judgment cannot stand.

2. We now come to the question whether there was a breach by plaintiff of his covenant of good right to convey. On the 15th of June, 1920, plaintiff and his wife executed to one A. W. Day an oil and gas lease which hereafter will be referred to as the Day lease. By the terms of the instrument the lessors in consideration of the sum of $1, and of the covenants to be kept, paid and performed by the lessee, granted, leased and let to the lessee certain land, "to have and to hold the same" for the term of two years from the date of the lease, and "as much longer as oil and gas, or either of them, shall be produced from said land by the said lessee." The lessee agreed to yield and pay to the lessor the one-eighth part or share of all the oil which he might obtain and save from the land. Then followed these provisions: "If no well shall be commenced on the land above described within two years from the date hereof, this lease shall become null and void, unless the lessee shall pay to the lessor for further delay a rental of twenty-five cents per acre in advance for each additional year until a well is commenced on said lands. All royalties, delay rentals and other payments which may fall due under this lease shall be paid direct to lessor or be deposited to his

[75 Mont. 356.]
credit in Security State Bank of Devon, Montana, which is hereby constituted agent of the lessor with power to receive and receipt for the same. Upon failure of the lessee to make any of the payments above provided for delay in commencing a well on the date upon which the same becomes due, the lessor shall have the right to declare a forfeiture of this lease if such payment be not made within ten days after written notice to pay the same.

"Upon the payment of one dollar at any time by the lessee to the lessor the lessee shall have the right to surrender this lease for cancellation by redelivering the same to the lessor or to the said bank * * * his agent therefor, and upon such surrender being made, all payments and liabilities thereafter to accrue by the terms of this lease shall be avoided and extinguished and this lease becomes null and void."

It is admitted that after accepting the lease from the plaintiff, Day never did anything with respect to it either in the way of development or in paying rentals. The plaintiff did not give to Day any notice of forfeiture, taking the position that, as Day did not drill a well nor pay any rentals, the lease terminated automatically on the fifteenth day of June, 1922.

In the lease to defendant plaintiffs granted, demised and leased to the defendant, "for the sole and only purpose of mining and operating for oil, gas, hydrocarbons, and other minerals," the land therein described, being the same land embraced in the Day lease. The defendant contends that by the use of the word "grant" in the lease the plaintiff warranted that he had not conveyed the same estate or any part thereof, or any right, title or interest therein to any other person than the defendant and the court so instructed the jury, adding that if the plaintiff had so conveyed said estate, or any part thereof, or any right, title or interest therein to any person other than the defendant prior to the 11th of November, 1922, then the defendant had the right to recover from the plaintiff damages for the breach of such covenant, even though the covenant were

not expressly contained in the lease. We shall proceed upon the assumption that this theory is correct.

The determinative point is, then, whether the lease terminated on June 15, 1922, by reason of the failure of Day to comply with its terms or whether it was necessary for the plaintiff affirmatively to declare a forfeiture.

For informative purposes it will be well to note the fact [2] that the Day lease was executed upon a printed form, a form which was employed to a considerable extent in the Kevin field. It is apparent, too, that it was used generally without reference to the length of the term or to the exploratory period agreed upon. This serves to explain some of the misunderstandings which confront us. In order to arrive at an understanding of the true intent and meaning of the Day lease it is essential to consider two well-known types of oil and gas leases and the fundamental difference between the two. Indeed, a correct understanding of the question involved here cannot be arrived at without doing so.

These are denominated "or" and "unless" leases in the nomenclature of the oil fields and in legal literature anent the same. Under the provisions of the "or" type the lessee is obliged to either "drill or pay"; under the "unless" type he is not obligated to do either. In other words, under the first type, if the lessee does not drive a well within the exploratory period fixed he must pay such rental as is prescribed in the lease, and if the rentals be not paid suit to recover them will lie at the instance of the lessor. (*Galey* v. *Kellerman,* 123 Pa. 491, 16 Atl. 474; *Wills* v. *Manufacturers' Natural Gas Co.,* 130 Pa. 222, 5 L. R. A. 603, 18 Atl. 721; *Woodland Oil Co.* v. *Crawford,* 55 Ohio St. 161, 34 L. R. A. 62, 44 N. E. 1093; *Northwestern Oil & Gas Co.* v. *Branine,* 71 Okl. 107, 3 A. L. R. 344, 175 Pac. 533.) Failure to drill or pay would not of itself terminate the lease. (*Northwestern Oil & Gas Co.* v. *Branine, supra; Cohn* v. *Clark,* 48 Okl. 500, L. R. A. 1916B, 686, 150 Pac. 467.)

The forfeiture clause was held to be for the benefit of the lessor, who upon default of the lessee could either insist upon a forfeiture or waive it and sue for the rentals due, or as they became due within the fixed term of the lease. (*Galey* v. *Kellerman, supra; McMillan* v. *Philadelphia Co.,* 159 Pa. 142, 28 Atl. 220; *Woodland Oil Co.* v. *Crawford, supra.*) Until the lessor elected to declare a forfeiture, liability for rent continued. (*Mathews* v. *People's Natural Gas Co.,* 179 Pa. 165, 36 Atl. 216; *Roberts* v. *Bettman,* 45 W. Va. 143, 30 S. E. 95.)

The "or" lease does not terminate short of the period provided in the *habendum* clause, unless by mutual consent of lessor and lessee, surrender by lessee when that remedy is provided by the terms of the lease, or by forfeiture declared by the lessor. If the lessor desires to insist upon a forfeiture in order to rid his land of the lease it is necessary for him to exercise his option and declare the lease forfeited. This requires affirmative action by the lessor. (*Leatherman* v. *Oliver,* 151 Pa. 646, 25 Atl. 309; *Bartley* v. *Phillips,* 179 Pa. 175, 36 Atl. 217; *Edmonds* v. *Mounsey,* 15 Ind App. 399, 44 N. E. 196; *Henne* v. *South Penn. Oil Co.,* 52 W. Va. 192, 43 S. E. 147.)

In order to get away from the burdensome provisions of the lease adverted to, oil operators sought to free themselves from its stringent requirements by inserting in leases what has become known as the surrender clause under which they were privileged to surrender the lease and avoid further liability. But until surrender they 'were still held to their obligation to drill or pay, and lessees frequently found themselves liable for the payment of rentals.

Therefore the second type, or "unless" lease, was devised. The provision that if no well be commenced on the land within a certain period, the lease should become null and void unless the lessee should pay to the lessor for further delay a certain amount per year in advance for each additional year until a well be commenced, or completed (with occasional

verbal changes here and there) became standard. Under this clause the lessee was granted an option to drill or to pay rental, or to do neither as he chose. And under it the lease terminated *ipso facto* upon the failure to drill or pay, without further liability on the part of the lessee for rentals thereafter accruing. (18 Mich. Law Review, 658; *Glasgow* v. *Chartiers Gas Co.*, 152 Pa. 48, 25 Atl. 232; *Snodgrass* v. *South Penn. Oil Co.*, 47 W. Va. 509, 35 S. E. 820; *Northwestern Oil & Gas Co.* v. *Branine, supra; Butcher* v. *Greene,* 50 Ind. App. 692, 98 N. E. 876; *Van Etten* v. *Kelly,* 66 Ohio St. 605, 64 N. E. 560; *O'Neill* v. *Risinger,* 77 Kan. 63, 93 Pac. 340; *Eastern Oil Co.* v. *Smith,* 80 Okl. 207, 195 Pac. 773; *Blodgett* v. *Lanyon Zinc Co.*, 120 Fed. 893, 58 C. C. A. 79; *Hopkins* v. *Ziegler,* 259 Fed. 43, 170 C. C. A. 43.)

In this category the Day lease belongs. By its terms the lessee had an option to commence a well within two years, or to continue the lease in force by paying the stipulated rental. He had the right to terminate the lease at will. First, he might bring it to an end within the term fixed in the *habendum* clause—two years—by exercising the privilege granted by the surrender clause. Second, he might fail to commence a well within the time limited, or he might fail to pay any rental in advance.

In the Day lease the lessors were bound to accord the lessee certain privileges, but the lessee did not bind himself to do anything. It is true that if he chose to drill a well and realized production of oil or gas, he then became obligated to pay the lessors royalty, but that is beside the question.

When a contract is optional in respect to one party it is [3] to be construed strictly in favor of the party that is bound and against the one who is not bound. (*Eastern Oil Co.* v. *Smith, supra; Ireland* v. *Chatman,* 87 Okl. 223, 209 Pac. 408.) Not only that, but it is a recognized doctrine in this [4] court that oil and gas leases are to be construed liberally in favor of the lessor and strictly against the lessee. (*Thomas*

v. *Standard Dev. Co.,* 70 Mont. 156, 224 Pac. 870.)    In leases of this character time is of the essence of the contract. (*Thomas v. Standard Dev. Co., supra; Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411; *Clark* v. *American D. & M. Co.,* 28 Mont. 468, 72 Pac. 978.)

Usually oil and gas leases of this type provide a term [5] during which the lease shall extend until terminated, and an exploratory period during which the lessee may drill a well in default of which the lease shall terminate unless he pays rental. The Day lease is an anomaly. In an extended search we have not found another like it. Here the exploratory period is coincident with the term of the lease—two years.

Whether a forfeiture clause may ever serve a useful purpose in a lease of this type we are not called upon now to consider. In the instant case it is of no more use than the fifth wheel to a wagon, the uselessness of which we have heard remarked since childhood. A forfeiture clause, we have observed, is for the benefit of the lessor, not the lessee. Can it be possible that when the term of the lease, stated as two years in the *habendum* clause, has expired, when the lessee has neither drilled nor paid—has done nothing more than to take the lease from the hands of the lessor and put it of record—it still exists? Long after the Day lease expired by limitation the lessors gave to defendant the lease of November 11, 1922. The defendant entered upon the land and made valuable improvements. Incidentally, defendant's possession of the land has never been disturbed. Day did nothing. Could Day now make up his delinquency by paying to plaintiff the rentals he might have paid within the time limited in the Day lease and assert that lease to be now in full force? Assuredly no; a court of equity would not listen to such a thing. Should such a tender be made the plaintiff could lawfully reject it; could not lawfully accept it. A court would not permit the defendant's rights to be trifled with in that manner. Defendant urged plaintiff to give Day or his assignee the ten days' notice mentioned in the lease but this the plaintiff refused to

do. His judgment was good. The notice was unnecessary. On the fifteenth day of June, 1922, the Day lease came to its end. It expired by limitation. It ceased automatically. (*Eastern Oil Co.* v. *Smith, supra; Northwestern Oil & Gas Co.* v. *Branine, supra; Ireland* v. *Chatman, supra; O'Neill* v. *Risinger, supra.*)

If the defendant's contention were correct the forfeiture clause in the Day lease would in effect inure to the benefit of the lessee; for notwithstanding that he had not exercised the rights which he had the option to exercise, the lease, although at an end by every canon of construction which seems applicable to the present controversy, would still be held to be in full force, in the absence of notice of forfeiture. If this forfeiture clause is absolutely irreconcilable with the general intent of the lease, the general intent must control. Particular clauses of a contract are subordinate to its general intent by the express provisions of the statute. (Sec. 7541, Rev. Codes 1921.) Furthermore, the forfeiture clause follows the *habendum* clause, the "unless" clause, and other essential parts of the lease. And section 6853, Revised Codes of 1921, provides that if several parts of a grant are absolutely irreconcilable, the former part prevails. A further discussion would seem unnecessary.

The Day lease expired by limitation on June 15, 1922, and the plaintiff had a good right to convey, when, on November 11, 1922, he executed the lease to the defendant. The defendant's counterclaim, therefore, has no foundation and if the court erred in instructing the jury with reference thereto, or if the jury disregarded the instructions of the court upon that feature of the case, neither of these errors operated to the defendant's prejudice. The court erred in including in the judgment in favor of the plaintiff the amount represented by the notes secured by the second mortgage.

The cause is remanded to the district court of Toole county with directions to deduct from the judgment as of the date

when it was entered the sum of $272.75, being the amount of the notes and interest secured by the second mortgage, and when so modified the judgment shall stand affirmed.

*Modified and affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.