CHRIST SCHUMACHER, A/K/A CHRIS SCHUMACHER, PLAINTIFF AND RESPONDENT, v. ALBERT I. COLE AND EVA COLE, HIS WIFE, DEFENDANTS AND APPELLANTS.

No. 9308.

Submitted February 25, 1957.    Decided April 21, 1957.

309 Pac. (2d) 311.

Mr. D. C. Warren, Glendive, Mr. Charles G. Bangert, Enderlin, North Dakota, for appellants.

Messrs. Hoover & Hoover, Circle, Mr. Leif Erickson, Helena, for respondent.

Mr. Bangert and Mr. Erickson argued orally.

MR. JUSTICE CASTLES:

Respondent brought suit to quiet title to the lands here involved, basing his claim of ownership upon tax deeds to McCone County and subsequent quitclaim deeds from McCone County and adverse possession.

Appellants by answer and counterclaim denied respondent's title and set up title in Eva Cole Velleu in certain parts of the land involved referred to as the Cole land. Appellants, Harris and Nollman, claimed an interest in certain parts of the land involved under oil and gas leases entered into in 1922. Appellant Nollman, a resident of Florida, was defaulted. His motion to set aside the default was denied.

McCone County took tax deeds to the Cole land on October 4, 1941, and by quitclaim deed, deeded the land to respondent on November 4, 1941. As to the land which the appellant Harris claimed to have leased, other than the Cole land, McCone County took the tax deed on October 9, 1930, and the property was transferred to respondent by quitclaim deed January 6, 1942.

The oil and gas lease, under which appellant Harris claimed an interest in the Cole land, was made on February 23, 1922, for a primary term of five years for a consideration of $1.00. The lease on the other land involved was made on February 14, 1922, also for a primary term of five years for a consideration of $1.00.

Respondent's reply alleged that appellant Harris had neither drilled any wells, produced any oil or gas, nor paid any delay rentals, and had permitted the leases to expire, and that the leases were forfeited, null, void and of no effect.

Appellants claimed that the taxes, tax proceedings, tax deeds, and quitclaim deeds were null and void and asked for redemption

of part of the land. Appellant Harris further claimed that if the court should find for respondent, nevertheless such decision would not affect his vested rights in the minerals.

Respondent pleaded that appellants were barred by their laches and the trial court so found.

The case was tried before a jury. The following interrogatories were answered by the jury and adopted by the court as part of its findings.

"1. Do you find from the evidence that Plaintiff Christ Schumacher, either personally or through agents, employees, or representatives, entered into the possession and control of the lands involved prior to January 9, 1942? Yes.

"2. If your answer to the foregoing question was yes, do you further find that such use has been continuous each year thereafter, either for the ordinary use of the occupant, or for the improvement of said lands, or for pasturage during the regular grazing season? Yes.

"3. If your answers to questions one and two were yes, was such possession and use by Christ Schumacher either personally or through his agents, employees, or representatives, actual, visible, open, and adverse throughout that period? Yes.

"4. Did Christ Schumacher, either personally or through his agents, employees, or representatives, assert and have the exclusive use and possession of said lands throughout that period? Yes.

"5. Did the plaintiff, Christ Schumacher, either personally or through his agents, employees, or representatives, make improvements on these lands? Yes.

"6. If your answer to question 5 is yes, did such improvements increase the value and usability of such lands? Yes.

"7. Do you find under the circumstances shown by the evidence that defendant Eva Cole Velleu, delayed for an unreasonable length of time in asserting her present claim to these lands? Yes.

"8. Upon what date did the plaintiff go into actual open, adverse and notorious possession of said land? Nov. 4, 1941.

"9. If you find that the plaintiff went into actual adverse, open and notorious possession of said real estate, how long did he remain in such possession? Sept. 16, 1952.

"10. On what date do you find that the plaintiff removed from his farm to Wolf Point, Montana? 1948."

Appellants have set up twenty-three specifications of error. They may be grouped as follows: (1) There is a variance between the pleadings and judgment; (2) that the record does not support a finding that respondent's possession satisfied the requirements of the statutes on adverse possession; (3) that the oil and gas leases are still in effect; and (4) that there was no laches on the part of any of the appellants. Other problems presented are not meritorious.

This suit was started as a statutory action to quiet title, and ▮▮ default was entered against several defendants. Then, upon appellant Harris' answer and cross-complaint wherein he alleges an interest under the aforementioned oil and gas leases, the respondent, by his reply, asks for affirmative relief to cancel the oil and gas leases. Appellant asserts that this is a departure and a variance. The argument contained in the brief of counsel has been disposed of by the decision of this court in Sanborn v. Lewis and Clark County, 113 Mont. 1, 120 Pac. (2d) 567, 570.

In discussing the general statute on quieting title, then section 9479, R.C.M. 1935, now R.C.M. 1947, section 93-6203, the court said:

"Section 9479 permits inquiry into the whole title of the property in question. All persons claiming adversely to the plaintiff may be cited in and adverse claims of title of all kinds may be inquired into, the purpose being to enable the plaintiff to quiet his title as against unfounded claims of all nature. The remedy provided is a more easy and expeditious mode of clearing title than under the old chancery system, enlarging the power of the court to determine all manner and any number of adverse claims to land and quiet title thereto. 5 R.C.L. 643. Under our section 9479 the court is given unusually broad power in such a pro-

ceeding, including the power to remove clouds from the title and to cancel instruments of title as incidental and as may be necessary to the main purpose of quieting the title.''

The oil and gas leases, exhibits 13 and 14 constitute clouds on the title of the respondent. Under the Sanborn case, incidental to the main relief of quieting the title, the court could declare a cancellation of those oil and gas leases.

*Adverse Possession.* Respondent asserts adverse possession for ▮ the statutory ten-year period under color of title under R.C.M. 1947, section 93-2509, and also adverse possession for the ten-year period under R.C.M. 1947 section 93-2511.

Appellants assert that respondent did not prove by a preponderance of evidence that his possession was exclusive, or continuous, or that the land was enclosed by a substantial enclosure.

The jury's findings, which were adopted by the court as to these matters are amply supported by the record. The respondent leased the Cole land from the county in 1929 and enclosed it by a fence. He purchased this land from the county in 1941. He purchased the other land here involved from the county in 1942, but likewise had had it fenced together with the Cole land since 1929, and continued to keep up the fences adjoining with neighbors' fences since that time. He ran livestock on the land during the regular grazing season continuously from at least 1940 on; paid taxes on the land since he purchased it, and constructed a dam on the property in 1946.

The jury and the trial court were justified in finding adverse possession. Respondent was clearly holding the land under color of title derived from the county's tax deeds and the quitclaim deeds to him. Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206; Hentzy v. Mandan Loan & Investment Co., Mont., 286 Pac. (2d) 325; Long v. Pawlowski, Mont., 307 Pac. (2d) 1079.

The problem concerning the validity of the oil and gas leases ▮ will next be considered. As previously related, respondent is the owner of the fee title to the surface of the land. Appellant Harris asserts that nevertheless his oil and gas leases are valid. The leases were both obtained in 1922 for a term of five years.

One of the leases applied to eighty acres of the Cole land. The other applied to 160 acres known as the Montgomery land. No drilling, no payments of rental or anything else was ever done by appellant Harris. It was also shown that no notice or demand to pay rent or drill was ever made. The trial court found that the leases became null and void at the expiration of the five-year term.

The two leases read in part as follows:

"To Have and to Hold, the same for the term of 5 years from this date, and as much longer as Oil or Gas or either of them shall be produced from said land by the lessee, or as much longer as rent shall be paid for this lease as hereinafter mentioned."

Then, after provisions for certain other rights as to use of the lands and royalties, this paragraph appears with reference to rental "hereinafter mentioned" in the habendum clause above quoted:

"If no well shall be commenced on the land above described, or in the vicinity thereof within five years from the date hereof, this lease shall become null and void unless the lessee shall pay to the lessor for further delay, a rental of ten cents per acre in advance for each additional year until a well is commenced on said land or in said vicinity at which time said payment shall cease. All royalties, delay rentals and other payments which may fall due under this lease shall be either paid directly to lessor or to be deposited in his credit in The First National Bank of Petersburg, North Dakota, which is hereby constituted agent of the lessor with power to receive and receipt the same. Upon failure of the lessee to make any of the payments above provided for delay in commencing a well on the date upon which the same becomes due, the lessor shall have the right to declare a forfeiture of this lease if such payment be not made within six months after written notice to pay the same, said notice to be sent to said lessee, his heirs, executors, administrators, successors, and assigns by registered mail."

Appellant asserts that this is an "or" lease as distinguished

from an "unless" lease and that it would not terminate without a declaration of forfeiture and notice.

The language of the two leases involved here is almost identical to the lease considered by this court in McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 Pac. 582, 586. The only difference is that the habendum clause in the McDaniel lease makes no reference to delay rentals and that in the instant case does.

In the McDaniel case, supra, this court said:

"* * * it is a recognized doctrine in this court that oil and gas leases are to be construed liberally in favor of the lessor and strictly against the lessee. Thomas v. Standard Dev. Co., 70 Mont. 156, 224 Pac. 870. In leases of this character time is of the essence of the contract." Citing cases.

In Bowes v. Republic Oil Co., 78 Mont. 134, 142, 252 Pac. 800, 802, the court said:

"While forfeitures are not usually favored in the law, owing to the peculiar nature of oil and gas leases, forfeitures are here favored rather than frowned upon, Thornton on Oil and Gas, 4th Ed., 512; Solberg v. Sunburst Oil & Gas Co., 76 Mont. 254, 246 Pac. 168."

After discussing the difference between an "or" and an "unless" lease, this court in the McDaniel case said:

"The provision that, if no well be commenced on the land within a certain period, the lease should become null and void, unless the lessee should pay to the lessor for further delay a certain amount per year in advance for each additional year until a well be commenced, or, completed (with occasional verbal changes here and there), became standard. Under this clause the lessee was granted an option to drill or to pay rental, or to do neither as he chose. And under it the lease terminated *ipso facto* upon the failure to drill or pay, without further liability on the part of the lessee for rentals thereafter accruing." Citing cases and authorities.

Further, this court in the McDaniel case discusses the forfeiture clause, and because of the position of counsel that the

leases would not terminate without a declaration of forfeiture and of the aptness of the language, we quote again from the McDaniel case, supra, 75 Mont. 356, 367, 243 Pac. 582, 586, as follows:

"Whether a forfeiture clause may ever serve a useful purpose in a lease of this type we are not called upon now to consider. In the instant case it is of no more use than the fifth wheel to a wagon, the uselessness of which we have heard remarked since childhood. A forfeiture clause, we have observed, is for the benefit of the lessor, not the lessee. Can it be possible that when the term of the lease, stated as two years in the *habendum* clause, has expired, when the lessee has neither drilled nor paid, has done nothing more than to take the lease from the hands of the lessor and put it of record, it still exists? * * * Defendant urged plaintiff to give Day or his assignee the ten days' notice mentioned in the lease, but this the plaintiff refused to do. His judgment was good. The notice was unnecessary. On the 15th day of June, 1922, the Day lease came to its end. It expired by limitation. It ceased automatically." Citing cases.

Further, this court, in the McDaniel case, said: "If this forfeiture clause is absolutely irreconcilable with the general intent of the lease, the general intent must control."

In Bowes v. Republic Oil Co., supra, 78 Mont. at page 141, 252 Pac. at page 802, this court said:

"It is the plain intention of the parties and not the mere wording of a lease which fixes its nature as an 'or' lease or an 'unless' lease, as defined in McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 Pac. 582."

This court then went on to hold in the Bowes case that even though the word "unless" did not appear in that lease, it nevertheless was an "unless" lease and expired without any declaration of forfeiture. See also, Thomas v. Standard Dev. Co., 70 Mont. 156, 224 Pac. 870; McNamer Realty Co. v. Sunburst Oil & Gas Co., 76 Mont. 332, 247 Pac. 166; Abell v. Bishop, 86 Mont. 478, 284 Pac. 525; Willard v. Campbell, 91 Mont. 493, 11 Pac. (2d) 782.

The language of the clause in the habendum clause contains the word "or" not "unless," but the language of the clause expressly refers to the rental clause appearing later in the lease. There can be no doubt as to the intention of the parties when the "unless" was put in the rental clause. Bowes v. Republic Oil Co., supra. Any doubt, if there was one, would have to be resolved against the lessees. McDaniel v. Hager-Stevenson Oil Co., supra; Thomas v. Standard Dev. Co., supra.

The court found in the present case that Harris and Nollman secured the leases in question in February of 1922; paid an actual consideration of $2; that neither Harris nor Nollman, personally or through agents or otherwise, paid anything further to the then owners or their successors, nor did they themselves, or through their agents, drill or prospect for oil or gas as provided by the lease. As the court said in the McDaniel case, they neither drilled nor paid. They did nothing more than take the leases from the hands of the lessors and put them of record. If the contention of the appellants could be sustained, then they would have held these now valuable lands for thirty years for a cash outlay of $2. Both leases expired by their terms in February of 1927, and the appellant Harris has had no right in the land since that date.

As to appellants' contention that there was no laches on the part of any of the appellants, this court is not called upon to decide.

Appellants assert that the case of Bilby v. Wire, N.D., 77 N.W. (2d) 882, decided by the Supreme Court of North Dakota in July 1956, is in point. It should be noted that in that case there was a severance of the mineral interest, and the court held that where there had been a severance of the interest, and the county takes tax titles thereafter without mentioning the mineral interest separately, it acquires tax title to the surface only. Thereafter, the holder of the tax title does not hold adversely simply by possessing the surface. In view of what has been said previously as to the leases being forfeited, the Bilby case would have no application here.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.