No. 12230

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

GORDON CHRISTIAN and LORENE CHRISTIAN,
his wife,

                    Plaintiffs and Respondents,

    -vs-

A. A. OIL CORPORATION, a corporation,

                    Defendant,
    and

ROBERT E. BYRNE,

                    Defendant and Appellant;
- - - - - - - - -
ROBERT E. BYRNE,

                    Cross-Complainant and Appellant,

    -vs-

A. A. OIL CORPORATION, a corporation,
GORDON CHRISTIAN and LORENE CHRISTIAN,

                    Cross-Defendants and Respondents.

_____

Appeal from:  District Court of the Ninth Judicial District,
               Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

    For Appellant:

        Nelson and Kalbfleisch, Shelby, Montana
        James A. Nelson argued, Shelby, Montana

    For Respondents:

        Aronow, Anderson and Beatty, Shelby, Montana
        Robert G. Anderson argued, Shelby, Montana
        Church, Harris, Johnson and Williams, Great Falls, Montana
        Douglas C. Allen argued, Great Falls, Montana

_____

                    Submitted: January 22, 1973
Filed: FEB 27 1973           Decided: FEB 27 1973

_Thomas J. Kearney_
                      Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff landowners, Gordon and Lorene Christian, brought this action to quiet title to separate oil and gas leases owned by A. A. Oil Corporation and Robert E. Byrne, defendants. This appeal is from a judgment in the district court of Toole County by the Hon. R. D. McPhillips, district judge, sitting without a jury. Judge McPhillips found A. A. Oil's 1741.64 acre lease valid, subject to a top lease on the same lands in favor of Robert E. Byrne; and finding an 867.42 acre lease valid in favor of Byrne. Byrne now appeals from the judgment relating to the larger lease only.

On April 5, 1940, James and Bertha Christian executed an "unless" type oil and gas lease to John Reynolds covering a tract of about 1740 acres in Toole County, Montana. Shortly thereafter, title to this leasehold entered was assigned to A. A. Oil Corporation. The lease was amended twice, first in 1941 and again 1946, each time extending the lease for five year periods. Incorporated into one of the amendments was a provision that in the event the lessor should believe the lessee to be in default of any of the covenants, lessor was to give lessee notice in writing specifying the alleged violation and lessee was to have forty-five days within which to remedy any existing breach. The primary term of the lease expired on July 1, 1951.

In 1950 an oil and gas well known as Christian #1 was completed, with an estimated natural gas flow of 250,000 to 500,000 cubic feet of gas per day. Christian #1 well was plugged and abandoned in 1958 without any oil or gas having been commercially sold therefrom.

The district court also found that drilling of Christian #2 commenced on July 1, 1951 and was completed later that same year. Gas from Christian #2 was first purchased by Montana-Dakota Utility Co. In November, 1954, Montana Power Co. started purchasing natural gas from said well. Cost of operation and supervision for producing is provided by Montana Power Co. There is no evidence that Christian #2 was ever plugged and abandoned.

The district court found that at the time of the trial Christian #2 had an estimated gas production of 1,500,000 to 3,000,000 cubic feet of gas per day. No evidence was offered to show the capacity to be any different

except the testimony of Jerry Branch, a geologist, who testified he thought the well to be noncommercial. The district court allowed Branch to testify over repeated objections that sufficient foundation was not laid and that he was not qualified to testify on the subject. After hearing Branch's testimony, the court sustained the objections and disregarded Branch's testimony.

No facts were presented as to whether Christian #2 had sufficient pressure to force gas into a nearby pipeline.

Gordon Christian gave notice on August 14, 1963, stating that A. A. Oil had not paid royalties or rentals, had failed to conduct exploration, and that the lease would be declared forfeited " * * * unless the breaches of the terms of said oil and gas leases are corrected and remedied within forty-five (45) days of the date of service of said notice."

On August 19, 1963, Gordon and Lorene Christian executed to Robert Byrne an oil and gas lease on the same lands involved in the A. A. Oil lease. Byrne gave the Christians a draft for $1,741.64 in payment, but it was not presented for payment for nearly two years after issued. On this same day, the Christians requested that the lease be returned due to the conflicting prior lease with A. A. Oil. Byrne refused and duly recorded the lease.

In August of 1963, Gordon and Lorene Christian commenced a quiet title action on the tract in question against A. A. Oil and Robert Byrne. The object of the suit was to extinguish the leasehold interests of Byrne and the A. A. Oil Corporation. Byrne now appeals from the judgment extinguishing his leasehold interest.

Gordon Christian died in June, 1965 and his estate was probated in Toole County. In October of 1966, Lorene Christian as executrix of his estate petitioned the court for authority to ratify the A. A. Oil lease, reciting that a settlement had been reached between A. A. Oil and the estate. Over objections of Byrne, the probate court permitted the settlement. In July, 1965 A. A. Oil conveyed their lease to Bernice Lutz, who is holding in trust for Cedor Aronow and others, with a reservation of an overriding royalty and retention of two gas wells.

The significant issues raised upon appeal are:

(1) What effect does a notice clause have on the term of the lease after expiration of the primary term?

(2) Was the district court correct in finding the A. A. Oil Corporation lease a valid lease?

(3) Does the principle of equitable estoppel have any application to the facts as presented in this case?

(4) Did the probate court have authority to ratify the settlement of the A. A. Oil lease?

(5) Is the evidence of Branch, the geologist, concerning costs and production admissible?

(6) Is it permissible for a landowner to shift the burden of proof to an adverse intervening lessee to prove an underlying oil and gas lease invalid?

In Montana oil and gas leases are to be construed liberally in favor of the lessor and strictly against the lessee. Schumacher v. Cole, 131 Mont. 166, 309 P.2d 311; Thomas v. Standard Development Co., 70 Mont. 156, 224 P. 870. And further, while forfeitures are usually not favored in the law, due to the peculiar nature of oil and gas leases, forfeitures are here favored. Solberg v. Sunburst Oil & Gas Co., 76 Mont. 254, 246 P. 168.

The first issue, the effect a notice clause has on the term of the lease after expiration of the primary term, is the principal issue upon appeal. In the original oil and gas lease executed on April 5, 1940, the habendum clause provided " * * * that this lease shall remain in force for a term of 5 years from this date and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." Subsequently, on July 1, 1941, the primary term was extended " * * * subject to compliance with its original and * * * amended conditions." In paragraph (d) of the amended lease appears the following provisions:

> "(d) - That in event lessor has occasion to charge that lessee or assigns may not be carrying out his (or its) obligations under intent of terms of lease and amendments thereof * * * Lessor shall notify Lessee in

- 4 -

writing, specifying the alleged breach and Lessee shall
have the full period of forty-five days from and after date
of service of such notice within which to remedy any
existing breach * * * lease shall terminate at the option
of the lessor".

Byrne contends that the above notice provision has no application
to an expired oil and gas lease, citing Schumacher this Court held that an
"unless" type oil and gas lease may expire automatically at the conclusion
of the primary term without a declaration of forfeiture or notice to a
lessee if such be the general intent of the lease.  See also McDaniel v.
Hager-Stevenson Oil Co., 75 Mont. 356, 243 P. 582.

The Schumacher and McDaniel cases, however, can be distinguished.
In those cases the Court found an automatic termination at the expiration
of the primary term because no drilling, no payment of rentals, or anything
else was ever done beyond the initial consideration for the lease.

No notice is required and an "unless" type lease will automatically
terminate if the lessee fails to commence drilling, pay delay rentals, or
comply with the other obligations in the habendum clause.  But here the dis-
trict court found that at the end of the primary term Christian #1 well had
been drilled, having an estimated natural gas flow of 250,000 to 500,000
cubic feet of gas per day.  In addition, A. A. Oil had commenced drilling
the Christian #2 well.  In light of these facts the district court was correct
in finding that the A. A. Oil lease did not automatically terminate at the
end of the primary term.

In Fey v. A. A. Oil Corp., 129 Mont. 300, 285 P.2d 578, an almost
identical notice clause was present.  There this Court ruled that the lessor
who intends to claim forfeiture, where development is an element, has the
duty to demand that development proceed or commence.  In this respect, when
an oil and gas lease contains a notice clause, compliance with that clause is
necessary after expiration of the primary term of the lease where drilling
has commenced, the well remains capable of producing, and the lessee is con-
tinuing to develop with reasonable diligence.  After notice is given of claimed
forfeiture, it is for the court to determine whether the amount of production

- 5 -

or development is in accord with the terms of the agreement.

This leads us to the second issue involved in this appeal--whether the A. A. Oil lease continued in full force and effect.

The parties agreed that the lease should continue in effect as long as oil or gas was produced and the lessee exercises reasonable diligence in development. The 1941 amended lease specifically provides:

> "(e) - That it is understood and agreed that the commencement of operations for development of oil, and/or gas production upon said lands by lessee or assigns within the term of said lease and amendments thereof shall operate to extend same and lessee's rights, privileges and interests as hereunder for and during such period of time as Lessee or assigns shall prosecute such operations with reasonable diligence after the term expiration hereof, and in the event oil and/or gas in commercial quantity be discovered as a result thereof, this lease shall thereupon be and thereafter remain as fully in force and effect as though such discovery had been accomplished within the term hereof as hereinbefore stated".

The test for determining whether there was sufficient production or whether the lessee was acting with reasonable diligence in producing and marketing the gas from the leased lands is the diligence which would be exercised by the ordinary prudent operator having regard to the interests of both lessor and lessee. Sullivan, Handbook of Oil and Gas Law, § 91, p. 173, 2 Brown, Oil and Gas Leases, 2d ed., §16.02, p. 16-49. This is a question of fact that will depend upon the facts and circumstances of each case. Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187.

The rule pertaining to oil is different from gas due to the peculiar characteristics of producing gas. Oil may be stored above ground in tanks or other receptacles and may be moved to the market by various modes of transportation. Gas must be stored below ground and is moved to the market only by pipeline. In addition, the product of a gas well can only be transported to a market when the volume and pressure are sufficient. 2 Williams, Oil & Gas Law, § 853, p. 388.

The parties to the lease involved here may well have had this problem in mind. Paragraph (c) of the amended lease provides:

> "(c) - That if natural gas only, or as long as natural gas only, is found in commercially productive amounts

on the lands covered by said leases and amendments thereto, Lessee's and Assigns' obligations shall not require the producing of same until there is a commercial market available for such natural gas * * *."

Ordinarily, the mere discovery of oil and gas is not sufficient under a lease continuing, as in the present case, for "as long thereafter as oil or gas is produced." The oil or gas must be withdrawn from the land and reduced to possession for use in commerce, especially where the real consideration for the lease is the proceeds.

Here we are dealing with gas producing wells only. The discovery of gas in commercial quantities during the primary term satisfies the "thereafter" provisions of the habendum clause for a period of time, and thereby extends the lease into the secondary term. After the mineral is discovered the lessee is required to use reasonable diligence in operating the well and marketing the product within a reasonable time. Failure to do so will result in termination of the lease under the habendum clause after the expiration of the primary term. Berthelote v. Cole, supra; 2 Williams, Oil & Gas Law, § 854, p. 394; Sullivan, Handbook of Oil and Gas Law, § 41, p. 97, § 43, p. 100.

It has been held sufficient, under a lease similar to the one at issue here, to produce gas in commercial quantities, even though the gas is not in fact marketable because there was no available pipeline facilities or no commercial market within the area. Fey v. A. A. Oil Corp., 129 Mont. 300, 285 P.2d 578; Brown, Oil and Gas Leases, 2d ed., § 5.06, p. 30. However satisfaction of the marketing covenant in paragraph C of this lease will not satisfy the habendum clause indefinitely. After a reasonable time the lease will expire if there is no production.

The district court found the prevailing price paid for gas by the pipeline owner of six cents per thousand cubic feet (five cents for the years 1953 to 1956, six cents from 1956 to 1970) was exceedingly modest and suggestive of the fact that a market for the gas in the quantity which the well was capable of delivering did not exist. Christian #2 well had an estimated producing capacity of 1,500,000 to 3,000,000 cubic feet of gas per day. But there was no evidence that a commercial market was

available to purchase the gas. Further, there was no competent evidence to show that the gas well drilled could not produce gas in paying quantities.

This Court in Berthelote set down the rule in reference to the "thereafter" clause that to continue the lease after the fixed term requires that oil or gas is produced in paying quantities. There this Court upheld that part of the instruction to the jury which defined "paying quantities" to mean production in such quantities as will pay a profit to the lessee over operating expenses, excluding the initial cost of drilling and equipping the wells. This is still the law in this state.

Due to the alignment of the parties in this action to quiet title the burden rested upon Byrne to prove that the A. A. Oil well was incapable of producing gas in paying quantities. Byrne was required to prove that A. A. Oil did not use reasonable diligence in marketing the gas. Byrne failed to meet his burden of proof. Therefore, the district court was correct in finding that the A. A. Oil lease continued in full force and effect.

Directing our attention to the third issue for review, Byrne relies upon the doctrine of equitable estoppel, citing section 93-1301-6, R.C.M. 1947. Byrne contends that the Christians led him to believe that A. A. Oil's lease was expired and showed him in the abstract office written evidence of the "notice" of A. A. Oil's breach. The district court, however, found that Byrne was aware at the time of obtaining the lease that A. A. Oil had a prior lease of record covering the same land. Byrne examined the records in the Shelby abstract office and relied thereon. Where there is no reliance on any alleged misrepresentation, equitable estoppel does not apply.

Next, Byrne contends that the probate court, being a court of limited jurisdiction, had no authority to allow the executrix of the Gordon Christian estate to compromise and settle the dispute with A. A. Oil. It is true that the probate court does not have jurisdiction over questions of title to real property. Maury v. Jones, 25 F.2d 412 (9th Cir. 1928). But the probate court does have authority to authorize an executrix to settle claims against the estate. The probate court here simply authorized a compromise settlement

- 8 -

of a disputed claim involving the Gordon Christian estate and in no sense adjudicated title to real property.

Byrne also contends that the testimony of Branch, a local geologist, concerning costs of supervision and record keeping was admissible. The district court permitted Branch to testify in this respect but disregarded such testimony in its findings of fact because no proper foundation was laid. Branch is a petroleum and consulting geologist qualified to testify as to certain aspects of oil and gas production. However, no proper foundation was laid concerning his qualifications to give expert opinion evidence in the field of cost accounting or general operation of wells other than his admission that he signed an operating agreement. To attack the A. A. Oil lease requires a qualified expert, such as a reservoir engineer, to testify as to the reservoir capacity of the well, its bottom hole pressure or producing pressure, and whether the well was capable of producing in paying quantities.

The final issue for review concerns the burden of proof. Byrne claims that he relied upon/the Christians' intentions to obtain a release of the A. A. Oil lease. He contends that the Christians are estopped from taking a position favorable to A. A. Oil which has the effect of placing the burden on him to prove the validity of his own lease. This Court in Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968, commented that a claim of equitable estoppel may not be founded on a true statement as to a party's present intention with regard to his future act. The /Christians are not required to take a position in favor of one lessee or the other. In the instant case the burden of proof rested on Byrne's shoulders to establish the invalidity of the prior A. A. Oil lease in order to entitle him to judgment. This he failed to do.

For the foregoing reasons, the judgment of the district court is affirmed.

_____
Associate Justice

- 9 -

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 10 -